817 F.2d 480
 Maurice ARMSTER, Josefina Cabrales, Clarence Carnes, William
Clark, Nina Gorio, Patricia McCoy, Michael
Romberg, Maverick Veasey, Joseph
Walters, Petitioners,
v.
UNITED STATES DISTRICT COURT FOR the CENTRAL DISTRICT OF
CALIFORNIA, Respondent,
and
City of Riverside, City of Los Angeles, City of Rialto,
Terry Ford, Sherman Block, Sheriff of Los Angeles, Jeff
Launi, Daryl Gates, Police Chief of City of Los Angeles,
Robert Evans, Real Parties in Interest.
Celine ROLERSON, Dr. Mark Rolerson, M.D., individually Dr.
Mark Rolerson, M.D., as the natural father of
Elizabeth Rolerson, a minor, Petitioners,
v.
UNITED STATES DISTRICT COURT FOR the DISTRICT OF ALASKA, and
the Clerk of the United States District Court for
the District of Alaska, Respondents,
Volkswagenwerk A.G., a/k/a Volkswagenwerk
Aktiengesellschaft, a foreign corporation and
Volkswagen of America, Inc., a New
Jersey corporation, Real
Parties in Interest.
 Nos. 86-7354, 86-7362.
 United States Court of Appeals,
Ninth Circuit.
 April 22, 1987.
 
 Yagman and Yagman, Stephen Yagman, Los Angeles, Cal., for petitioners.
 Department of Justice, Douglas Letter, Washington, D.C., for respondents.
 No. 86-7354 Motion for Attorney's Fees
 Before KOELSCH, FERGUSON and REINHARDT, Circuit Judges.
 ORDER
 The proceedings in this matter thus far have involved a request by petitioners that we issue a writ of mandamus and a motion by the respondent that we vacate our original decision.[1] Both the request and the motion were denied. See Armster v. United States District Court (Armster I), 792 F.2d 1423 (9th Cir.1986); Armster v. United States District Court (Armster II), 806 F.2d 1347 (9th Cir.1986). Now before us is petitioner's motion for attorney's fees, filed pursuant to the Equal Access to Justice Act. 5 U.S.C. Sec. 504, 28 U.S.C. Sec. 2412 (1982).
 
 I. Background
 
 1
 On June 12, 1986, the Administrative Office of the United States Courts sent a memorandum to all United States District Judges informing them that if they empaneled new civil juries, they would be in violation of their duties under the Anti-Deficiency Act. 31 U.S.C. Sec. 1341(a)(1) (1982). According to the Administrative Office, a $3.8 million deficit in the Judiciary's budget was likely to occur. Because the Anti-Deficiency Act proscribes expenditures in excess of appropriated funds, the "only feasible short-term solution," according to the Administrative Office, was for the district courts to suspend civil jury trials nationwide from June 16, 1986 through the end of the fiscal year, September 30, 1986.
 
 
 2
 Stephen Yagman was the lawyer representing the petitioners, all of whom were civil rights plaintiffs with jury trials scheduled to commence in the United States District Court for the Central District of California prior to September 30.[2] On Friday, June 13, Yagman was informed by the clerk for the district judge to whom one of his cases was assigned that no new jury trials would be conducted in the Central District. The clerk then asked him whether he would waive a jury on behalf of his client. Yagman refused.
 
 
 3
 Immediately thereafter, Yagman filed an emergency petition seeking a writ of mandamus to prohibit the district court from suspending jury trials. In that petition, he asked for attorney's fees.[3]
 
 II. Attorney's Fees and the EAJA
 
 4
 Under the Equal Access to Justice Act (EAJA), a prevailing party is entitled to an award of attorney's fees and costs "incurred by that party in any civil action ... brought ... against the United States" unless the "position of the United States was substantially justified or ... special circumstances make an award unjust." 28 U.S.C. Sec. 2412(d)(1).
 
 
 5
 In Armster I, we adopted the position urged upon us by Yagman and ruled that the suspension of civil jury trials violated the seventh amendment. However, we found it unnecessary to issue the writ, stating that we were "confident ... that the [district] judges ... who are presiding over the cases that are the subject of this petition will now act in light of the principles set forth in this opinion." 792 F.2d at 1431.
 
 
 6
 Because we did not issue a writ, we must now consider whether petitioners may be considered "prevailing" parties for purposes of EAJA. We view such questions pragmatically. Here, petitioners obtained a decision establishing the proposition that the district court was precluded from suspending civil jury trials. That decision, we said, would result in the empaneling of juries in petitioners' cases. That petitioners did not prevail in the formal sense of obtaining the specific relief sought--a writ--does not preclude a finding that petitioners were "prevailing parties." See Southwest Marine Inc. v. Cambell Industries, 732 F.2d 744, 747 (9th Cir.1984); 796 F.2d 291 (9th Cir.1986); 811 F.2d 501 (9th Cir.1987) (construing 15 U.S.C. Sec. 26 & 42 U.S.C. Sec. 1988). In our view, the relief obtained by Yagman is sufficient to make his clients "prevailing parties." See Greater Los Angeles Council on Deafness v. Community Television of Southern California, 813 F.2d 217, 221 (9th Cir.1987).
 
 
 7
 It is true that the Administrative Office withdrew its notice on the day our opinion issued. However, we cannot say that its actions were not influenced by the filing of the mandamus petition and the subsequent judicial actions. More important, the record is far from clear that our decisions, including the stay order, did not affect the conduct of the district court. Where the petitioner obtains a favorable decision and the result he seeks is then implemented, a cause and effect inference may ordinarily be drawn. While we must consider all other relevant facts and circumstances, Braafladt v. Board of Governors, 778 F.2d 1442, 1444 (9th Cir.1985), the respondent has the burden of rebutting the inference and persuading us that the causal link has not been established.
 
 
 8
 Here, an award of attorney's fees would effectuate one of the primary purposes of the Act. In several respects, this case is representative of the type that impelled Congress to enact EAJA. As the House Report to EAJA states, an important reason for the enactment of the statute was to counterbalance the fact that "the Government with its greater resources and expertise can in effect coerce compliance with its position." H.R.Rep. No. 1418, 96th Cong., 2d Sess. 10, reprinted in 1980 U.S.Code Cong. & Admin.News 4984, 4988 (quoted in Escobar Ruiz v. INS, 813 F.2d 283, 288 (9th Cir.1987)). According to the Report, the purpose underlying EAJA was "to insure that individuals will actively seek to protect their rights vis-a-vis the government." H.R.Rep. No 1418, at 14, 1980 U.S.Code Cong. & Admin.News 4993.
 
 
 9
 By challenging the nationwide suspension of the right to civil jury trial, Yagman has performed precisely the role intended by Congress when it enacted EAJA. As the House Report notes:
 
 
 10
 [A] party who chooses to litigate an issue against the Government is not only representing his or her own vested interest but is also refining and formulating public policy. An adjudication or civil action provides a concrete, adversarial test of Government regulation and thereby insures the legitimacy and fairness of the law.
 
 
 11
 Id. at 10, 1980 U.S.Code Cong. & Admin.News 4988-89. The regulation at issue in Armster-the nationwide suspension of civil jury trials-constituted an egregious violation of constitiutional rights affecting all persons seeking to use the civil justice system. As one leading jurist described it, the suspension was an "astounding and shocking interruption of the constitional right to trial by jury." J. Weinstein, Adverse Effect of Budget Cuts on Justice in the Federal Courts, ABA Panel on Gramm-Rudman (Aug. 10, 1986).
 
 
 12
 Yagman's vigilance in the protection of his clients' constitutional rights served all citizens. His fortitude and tenacity in the service of his civil rights clients exemplifies the highest traditions of the bar. As Justice Brandeis noted, "[t]he great opportunity of the American bar is and will be to stand ... ready to protect the interests of the people." See Legal Fees: Hearings before the Subcommittee on Representation of Citizen Interests of the Committee on the Judiciary, United States Senate, Part I, 93d Cong., 1st Sess. 5 (1974) (Statement of Chairman Tunney, quoting Justice Brandeis).
 
 
 13
 Nonetheless, we reluctantly conclude that petitioners may not recover attorney's fees in this case. Under the Act, we may not award fees if "the position of the United States was substantially justified or ... special circumstances make an award unjust." 28 U.S.C. Sec. 2412(d)(1)(A). Although there are no special circumstances militating against a fee award here, the position of the district court was substantially justified.
 
 
 14
 In reaching our conclusion, "we consider the totality of the circumstances present prior to and during litigation.... The government must demonstrate that its position had a reasonable basis both in law and in fact." Underwood v. Pierce, 761 F.2d 1342, 1345-46 (9th Cir.1985) (citations omitted).
 
 
 15
 The district court determined that no further civil juries should be empaneled after receiving a notice from the Administrative Office of the United States Courts. That notice stated: "At the direction of the Executive Committee of the Judicial Conference, I am writing to advise you that, effective June 16, new civil jury trials will have to be suspended." See Armster II, 806 F.2d at 1362 (Appendix 1). As the government notes in its opposition papers to the motion before us, "[t]he Administrative Office's advice was given at the direction of ... [former] Chief Justice Burger, Chief Judge Browning of this Circuit, Chief Judge Campbell of the First Circuit, Chief Judge Clark of the Fifth Circuit, Chief Judge Markey of the Federal Circuit, Chief Judge McNichols of the Eastern District of Washington, and Chief Judge Robinson of the District Court for the District of Columbia." A district judge receiving such a notice might well reasonably have believed (notwithstanding any personal misgivings) that the suspension of all civil jury trials nationwide was justifiable, especially since there was no case law directly to the contrary. Cf. Underwood, 761 F.2d at 1346 ("The Secretary was thus put on clear notice that his position was without legal basis.").
 
 
 16
 Accordingly, we conclude that the position of the district court was substantially justified. 28 U.S.C. Sec. 2412(d)(1)(B). Were we to hold otherwise, we would be required to decide whether the district court is an entity against which attorney's fees may be recovered under EAJA. The government argues vigorously that it is not. Petitioners forcefully disagree, saying that EAJA does not exempt an entire branch of the government from its coverage.[4] In view of our holding, we do not decide that issue here.
 
 III. Conclusion
 
 17
 Although we determined in the prior proceedings in this case that the actions of the Administrative Office of the United States Courts ultimately resulted in the abridgement of the constitutional guarantee of the right to trial by jury, we now hold that the position of the district courts in response to the directive from the Administrative Office was, for purposes of the Equal Access to Justice Act, "substantially justified." Therefore, in accordance with the provisions of the Act, we must deny the motion for attorney's fees.
 
 
 18
 Motion Denied.
 
 
 
 [1]
 By this matter, we refer to the proceedings brought in civil action no. 86-7354, Armster v. United States District Court. We have no reason to consider here the proceeding in civil action no. 86-7362, Rolerson v. United States District Court, which we earlier ordered consolidated. Armster v. United States District Court, 792 F.2d 1423, 1424 (9th Cir.1986)
 
 
 [2]
 All the petitioners' cases were actions brought under 42 U.S.C. Sec. 1983. Most, if not all, involved claims of police misconduct
 
 
 [3]
 As noted supra n. 1, in Armster I, we ordered the consolidation of case numbers 86-7354 and 86-7362. No petition for attorney's fees was filed in Rolerson. We note that the Rolerson mandamus petition was filed subsequent to the petition in Armster. The Armster petition was filed on June 16, 1986. We granted a temporary stay that same day and scheduled a hearing on the merits. The petition in 86-7354 (Rolerson ) was filed on June 18, 1986 and relied on the stay we issued in Armster
 
 
 [4]
 We note the general proposition that "considering the purposes of the Equal Access to Justice Act, questions of its coverage should turn on substance--the fact that the party has endured the burden and expense of a formal hearing--rather than technicalities." Equal Access to Justice Act: Agency Implementation, 46 Fed.Reg. 32,900, 32,901 (1981) (Commentary to Model Rules). See also Escobar Ruiz, at 290 (relying on Commentary to the Model Rules)