In re Stephen C. PERRY, et
al., Petitioners.

No. 88–1475.

United States Court of Appeals,
First Circuit.

Heard May 3, 1989.

Decided Aug. 3, 1989.

Amy R. Tabor, Cooperating Atty., Rhode Island Affiliate, American Civil Liberties Union, Pawtucket, R.I., for petitioners.

Scott R. McIntosh, Appellate Staff, Civil Div., Dept. of Justice, with whom John R. Bolton, Asst. Atty. Gen., Earl R. Ohman, Jr., General Counsel, Bruce Justh, Deputy General Counsel, Steven S. Scheige, Occupational Safety and Health Review Com'n, and Anthony J. Steinmeyer, Appellate Staff, Civil Div., Dept. of Justice, Washington, D.C., were on brief for respondent

Occupational Safety and Health Review Com'n.

Before CAMPBELL, Chief Judge, TORRUELLA and SELYA, Circuit Judges.

SELYA, Circuit Judge.

Perched before us is a *rara avis*—an authentic case of first impression. Our efforts to classify this strange bird are hampered not only by the absence of direct precedents but also by the inexplicitness of the Equal Access to Justice Act (EAJA or Act), 28 U.S.C. § 2412 (1982 & Supp.V 1987).

The case took wing as an application for writ of mandamus to this court, whereby petitioners succeeded in annulling a gag order improvidently issued by an administrative law judge (ALJ). *In re Perry*, 859 F.2d 1043 (1st Cir.1988). Petitioners then moved under section 2412(d) of EAJA for an award of attorneys' fees against the Occupational Safety and Health Review Commission (OSHRC or Commission). We thereupon directed the parties to address certain questions,[1] the first of which asked whether a purely adjudicative governmental entity, like OSHRC, might ever be held to suffer a fee award under EAJA.

By resort to legislative history and congressional purpose, we have come to conclude that there is no room in the EAJA nest for claims like this one. Accordingly, we answer the initial question in the negative and deny the motion for fees.

## I. BACKGROUND

Because the underlying facts and travel are amply set forth in our earlier opinion, *In re Perry*, 859 F.2d at 1044–46, we abjure exegetic treatment of the origins and background of the mandamus proceeding. Suffice it to say that, once upon a time, the federal Occupational Safety and Health Administration (OSHA) cited General Dynamics (GenDy), a mammoth defense contractor, for transgressions of the Occupational

---

**1.** We attach as an appendix a copy of our February 6, 1989 order. Our answer to the first question disposes of the motion for fees and renders it unnecessary for us to consider the two other questions which we posed.

Safety and Health Act of 1970 (Safety/Health Act), 29 U.S.C. §§ 651–78 (1982 & Supp.V 1987). Both GenDy and a cadre of employees contested OSHA's proposed enforcement action, objecting to the orders' stringency and laxity, respectively. The matter fell within the Commission's jurisdiction, so the objections were consolidated and referred to an ALJ. The parties included the Secretary of Labor (prosecuting on OSHA's behalf), GenDy, and the employee group. The latter designated petitioner Stephen C. Perry, a union organizer, as employee representative. *See* 29 C.F.R. § 2200.22(a) (1988).

The ALJ issued several orders warning that if any party used the proceedings or the information developed therein for "exploitive purposes," the offender's participatory rights would be jeopardized. *In re Perry*, 859 F.2d at 1045. Later on, the ALJ excluded Perry from the hearings on the ground that he was "exploiting the proceedings for [union] organiz[ing] purposes" in derogation of the outstanding protective orders. *Id.* at 1046. Perry, joined by the employee group, asked OSHRC to review the exclusionary order.

In the best of circumstances, interlocutory review is available only in the Commission's discretion; on this occasion review was automatically refused when OSHRC, lacking a quorum because of vacancies (two commissioners' offices were unfilled), was unable to act on the request within 30 days. *See* 29 U.S.C. § 661(f); 29 C.F.R. § 2200.73(b) (1988); *see also In re Perry*, 859 F.2d at 1046. No appeal was possible. *See* 29 U.S.C. §§ 659(c), 660(a) (limiting courts' appellate jurisdiction to "final" orders of the Commission). Nevertheless, Perry and the employees (petitioners before us) sought mandamus in the hope that we might lift the gag order and reverse the exclusionary edict. Upon receipt of the mandamus petition, we directed the Secretary (on OSHA's behalf), GenDy, and OSHRC to respond to it. The replies proved to be a mixed bag. The Secretary denounced the gag order and supported issuance of the writ. GenDy took an opposite tack, defending the ALJ's rulings up and down the line. The Commission strad-

dled the fence; in a carefully-worded response, it declined to take a position on the validity of what had transpired but questioned whether mandamus was an appropriate vehicle for testing the rulings.

We took jurisdiction and held that the ALJ's interference with petitioners' First Amendment rights so far "exceed[ed] the proper scope of [his] authority as to constitute a usurpation of power." *In re Perry*, 859 F.2d at 1050. We undid both the gag order and Perry's banishment. *Id.* Petitioners plainly "prevailed." They then filed the instant motion. In it, they have not requested fees from the Secretary of Labor or OSHA, but have trained their EAJA guns exclusively on OSHRC.

## II. THE ANATOMY OF OSHRC

The principal purpose of the Safety/Health Act was to improve working conditions by formulating and overseeing occupational safety and health standards in the work place. *See, e.g.,* 29 U.S.C. § 651(b). The law vested rulemaking and enforcement powers in the Secretary of Labor, who exercises those powers through OSHA. *See* 29 U.S.C. §§ 655, 657–59. But, adjudicatory responsibilities lie elsewhere; it is OSHRC, not OSHA or the Secretary, which is given the task of "carrying out adjudicatory functions under [the Act]." 29 U.S.C. § 651(b)(3). In a nutshell, "Congress gave OSHA the power to make safety rules and to enforce them; but it gave OSHRC, an independent administrative body, the power to adjudicate violations of OSHA's rules and regulations." *Donovan v. A. Amorello & Sons, Inc.,* 761 F.2d 61, 63 (1st Cir.1985).

The duarchy operates in the following manner. The Secretary, through OSHA, promulgates safety and health standards for businesses. 29 U.S.C. § 655(a)-(e). OSHA is authorized to make inspections and investigations to insure compliance. 29 U.S.C. § 657. If OSHA concludes that its standards have been violated, it may issue citations and specify abatement periods. 29 U.S.C. § 658(a). Once such a citation is contested, OSHRC jurisdiction attaches. A hearing is held before an

OSHRC functionary, an ALJ, who, after taking evidence, files a report (Report). 29 U.S.C. § 659(c). The Report may suggest affirming or reversing OSHA's order or modifying it in some way(s). *Id.* OSHRC, which by statute is to be composed of three members, 29 U.S.C. § 661(a), receives the Report. If OSHRC directs administrative review within 30 days, it then conducts such review, and thereafter accepts, rejects, or modifies the Report in whole or in part, 29 U.S.C. § 659(c). Otherwise, the Report becomes the Commission's final order. 29 U.S.C. § 661(j). Final orders of the Commission are reviewable in the appropriate court of appeals on the petition of "[a]ny person adversely affected or aggrieved," 29 U.S.C. § 660(a), or of the Secretary. 29 U.S.C. § 660(b).

█ Whether or not plenary administrative review is undertaken, "[t]he Commission's function is to act as a neutral arbiter...." *Cuyahoga Valley Ry. Co. v. United Transportation Union*, 474 U.S. 3, 7, 106 S.Ct. 286, 288, 88 L.Ed.2d 2 (1985) (per curiam). OSHRC thus differs from the conventional agency model in that it is purely an adjudicator; there is no intermixing of regulatory, prosecutorial, and adjudicative functions. *See A. Amorello & Sons*, 761 F.2d at 65 (discussing OSHRC's role); *see also Marshall v. OSHRC*, 635 F.2d 544, 547 (6th Cir.1980); *Marshall v. Sun Petroleum Products*, 622 F.2d 1176, 1180–84 (3d Cir.), *cert. denied*, 449 U.S. 1061, 101 S.Ct. 784, 66 L.Ed.2d 604 (1980); *Brennan v. OSHRC*, 505 F.2d 869, 871 (10th Cir.1974);

*Dale M. Madden Constr., Inc. v. Hodgson*, 502 F.2d 278, 280–81 (9th Cir.1974).[2] For this reason, OSHRC has been likened to a federal district court:

> The commission was envisioned by its creators to be similar to a district court. It was established to settle disputes between employers and the Secretary of Labor over citations issued by the Secretary's inspectors. The commission, like a district court, has no duty or interest in defending its decision on appeal. As a purely adjudicative entity, it has no stake in the outcome of the litigation.

*Oil, Chemical & Atomic Workers Int'l Union v. OSHRC*, 671 F.2d 643, 652 (D.C. Cir.) (per curiam), *cert. denied*, 459 U.S. 905, 103 S.Ct. 206, 74 L.Ed.2d 165 (1982). *See also* Subcomm. on Labor of the Senate Comm. on Labor and Public Welfare, 92d Cong., 1st Sess., *Legislative History of the Occupational Safety and Health Act* 466 (Comm.Print 1971) (remarks of Sen. Javits) (OSHRC "should be [afforded] the same authority as ... a judge"); *id.* at 475 (remarks of Sen. Holland) (similar); 116 Cong. Rec. 38708 (Nov. 24, 1970) (statement of Rep. Steiger) (characterizing OSHRC as "an independent court, so to speak").

## III. DISCUSSION

█ We have discovered only two cases which touch at all upon the issue of whether an EAJA award can be rendered against a pure adjudicator as an aftermath of civil litigation.[3] In *S & H Riggers & Erectors*,

---

**2.** Two circuits, somewhat out of tune with the rest, have taken the view that, though principally an adjudicatory entity, OSHRC is empowered to adopt policies in the course of adjudication; and therefore, to appear as a party in the courts of appeals to defend those policies. *See Diamond Roofing Co. v. OSHRC*, 528 F.2d 645, 648 n. 8 (5th Cir.1976); *Brennan v. Gilles and Cotting, Inc.*, 504 F.2d 1255, 1266–67 (4th Cir.1974). We disagree. Although we recognize that "[t]he power to adjudicate inevitably encompasses, to some degree, the power to 'declare' the law", *A. Amorello & Sons*, 761 F.2d at 65, the Act's allocation of responsibilities between OSHRC and the Secretary, and Congress's rejection of earlier bills that would have combined rulemaking and adjudicatory power in a single board, *see, e.g.*, Subcomm. on Labor of the Senate Comm. on Labor and Public Welfare, 92d Cong., 1st Sess.,

*Legislative History of the Occupational Safety and Health Act* 36–49, 684–97 (Comm. Print 1971), conduce to the view that OSHRC's proper role is as a non-policymaking, purely adjudicatory body.

**3.** The pertinent provision of EAJA reads:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

*Inc. v. OSHRC*, 672 F.2d 426 (5th Cir.Unit B 1982), the panel relied on the Commission's failure actively to participate in the appeal as a "special circumstance" defeating EAJA liability, thus rendering it unnecessary to decide whether OSHRC could ever suffer a fee award. *Id.* at 429. The second case, *Armster v. United States District Court,* 817 F.2d 480 (9th Cir.1987), involved a federal trial court. The panel found the judge's handling of the matter to have been "substantially justified"—a finding which averted the need for "decid[ing] whether the district court is an entity against which attorney's fees may be recovered under EAJA." *Id.* at 484.

With respect, we decline to emulate these examples. As we see it, the threshold question is whether EAJA extends to purely adjudicative entities. Only if that question is answered affirmatively should we consider whether the government has shown either that its position was "substantially justified" or that "special circumstances" render an EAJA award unjust. *See* 28 U.S.C. § 2412(d)(1)(A); *see also* Appendix (questions 2 & 3). We proceed, therefore, to the heart of the matter: whether the actions of a purely adjudicatory entity taken in the course of an adjudication are beyond EAJA's reach.

### A. *What EAJA Says.*

■■■ The "American Rule" is that, absent a contrary statutory directive, contract provision, or other established fee-shifting mechanism, litigants must bear the costs inherent in their engagement of counsel. *See Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). In enacting section 2412(d), Congress carved out a limited exception to this rule referable to certain actions involving the federal government. But, because EAJA constitutes a waiver of sovereign immunity to this extent, its words must be narrowly construed and its borders rigorously observed. *See Ruckelshaus v. Sierra Club,*

463 U.S. 680, 685, 103 S.Ct. 3274, 3277, 77 L.Ed.2d 938 (1983); *Sierra Club v. Secretary of the Army,* 820 F.2d 513, 521 (1st Cir.1987); *Lane v. United States,* 727 F.2d 18, 20–21 (1st Cir.), *cert. denied,* 469 U.S. 829, 105 S.Ct. 113, 83 L.Ed.2d 57 (1984).

We turn, then, to the statute, mindful that interpretation must begin with the wording which Congress saw fit to employ. *See Chevron U.S.A., Inc., v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984); *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981); *United States v. Meyer,* 808 F.2d 912, 915 (1st Cir.1987). EAJA requires as a basic prerequisite that there be a "civil action ... brought by or against the United States," 28 U.S.C. § 2412(d)(1)(A), and defines "United States" to include "any agency and any official of the United States acting in his or her official capacity." 28 U.S.C. § 2412(d)(2)(C). Understandably, petitioners urge that this unqualified phraseology favors their position. They argue that a mandamus proceeding is a "civil action," that OSHRC is an "agency" of the government, and that an ALJ is an "official of the United States," 28 U.S.C. § 2412(d)(2)(C). From such homely truths, petitioners reason that the absence of explicit exclusionary language evinces Congress's intent to extend EAJA to adjudicative entities like OSHRC.

The Commission looks at the same statute in a much different light. It asseverates that a challenge to an order issued by a governmental board acting in a purely adjudicative capacity is clearly not a "civil action ... brought *by or against the United States.*" 28 U.S.C. § 2412(d)(1)(A) (emphasis supplied). Rather, respondent interprets the "by or against" language as restricting the intended scope of the law to actions in which the (federal) fee-target and the (private) fee-seeker occupy adversarial positions vis-a-vis each other (say, enforcer versus defendant or regulator versus regulated person) as opposed to those in which

28 U.S.C. § 2412(d)(1)(A). We note specifically that petitioners assert no claim under 28 U.S.C.

§ 2412(b).

the target merely referees a dispute between the fee-seeker and another party (whether or not the "other" party is also a federal actor). On this reading, an adjudicator would not become an adverse party simply because one of its orders is challenged.

The arguments on both sides fall short. It is readily evident that the words of the Act are not dispositive. Taken at face value, the language is ambiguous in the sense that more than one plausible interpretation is inferable from the statute's unvarnished words. Because EAJA neither expressly allows, nor expressly prohibits, an award of attorneys' fees against a purely adjudicatory body, "we must turn to the legislative purpose and history in search of guidance." *Hernandez–Colon v. Secretary of Labor,* 835 F.2d 958, 960 (1st Cir.1988).

### B. *Why Adjudicators Are Exempt.*

■ "A primary purpose in enacting the EAJA ... was to remove the obstacle of litigation expenses, including attorneys' fees, so that litigants may challenge unreasonable governmental action and vindicate their rights in court." *Crooker v. EPA,* 763 F.2d 16, 17 (1st Cir.1985) (per curiam); *see also Escobar Ruiz v. INS,* 813 F.2d 283, 288 (9th Cir.1987); *Oguachuba v. INS,* 706 F.2d 93, 98 (2d Cir.1983); H.R.Rep. No. 1418, 96th Cong., 2d Sess. 10, *reprinted in* 1980 U.S.Code Cong. & Admin.News 4953, 4984, 4988; *cf.* H.R.Rep. No. 120, 99th Cong., 1st Sess. 4, *reprinted in* 1985 U.S. Code Cong. & Admin.News 132, 132–33. We are hard-pressed to find that this purpose was addressed in any way to unreasonable *adjudicatory* action; elsewise, we would expect Congress to have extended EAJA well beyond litigation to which the United States was a party. After all, if EAJA was designed to ameliorate adjudicators' excesses, then reason dictates that private litigants battling with each other should be able to recover attorneys' fees from a federal court or other adjudicative body whenever one of them successfully appeals an unreasonable order or mindless decision. Yet, even petitioners do not contend that the Act sweeps so broadly. The

requirement of party status—that the civil action must be one "by or against the United States," 28 U.S.C. § 2412(d)(1)(A)—is, we think, powerful evidence of an intent to exempt "pure" adjudicators from EAJA's embrace.

Let us be perfectly clear. We do not imply that judges are incapable of egregious error or unjustified rulings. Indeed, as our earlier opinion attests, we recognize that such regrettable incidents can occur. *See In re Perry,* 859 F.2d at 1050. Withal, EAJA was never meant to be a panacea or to deflect all the misdirected slings and arrows lofted by government against a beleaguered citizenry. EAJA was, and is, a carefully focused legislative initiative aimed at curbing certain types of invidious governmental action; it was designed to level the playing field for government actors and private parties as litigation adversaries. We do not believe that Congress intended EAJA to apply to the *ad hoc* decisionmaking of purely adjudicatory entities, even if erroneous (or blatantly erroneous, for that matter).

An intent to exclude adjudicators from EAJA's reach is also discernible from the 1980 House Report, which recognized the Act as "rest[ing] on the premise that a party who chooses to litigate an issue against the government is not only representing his or her own vested interest but is also refining and formulating public policy." H.R.Rep. No. 1418, *supra,* 1980 U.S. Code Cong. & Admin.News at 4988. Where an entity is insulated from, and unable to influence, official policy, this legislative purpose would not be promoted by bringing the entity within EAJA's sphere. As we have already indicated, *see supra* at 537 & note 2, the Commission does not set policy in any meaningful sense. To the exact contrary, the Safety/Health Act "imposes policy-making responsibility upon the Secretary, not [OSHRC]." *Marshall v. OSHRC,* 635 F.2d at 547. As we have previously stated, "Congress did not intend OSHRC to possess broad powers to set policy through the creation of rules." *A. Amorello & Sons,* 761 F.2d at 65. Because of this dichotomy, petitioners' suit did not —indeed, could not—assist in refining and

formulating public policy, an important consideration in assessing EAJA's reach. *Cf. Boudin v. Thomas,* 732 F.2d 1107, 1114 (2d Cir.1984) (Congress did not intend that EAJA apply to habeas petitions because such petitions are "dedicated to vindicating individual rights based on the Constitution rather than refining rules and policy").

The view that EAJA extends only to agencies with regulatory and enforcement powers is likewise suggested by the frequent references in the statute's legislative history to obligations of the executive branch, *e.g.,* H.R.Rep. No. 1418, *supra,* 1980 U.S.Code Cong. & Admin.News at 4989; to "regulatory practices," *e.g., id.* at 4993; and to the government's "enforcement efforts," *e.g., id.* at 4990. It is against such duties that "the public interest in encouraging parties to vindicate their rights" must be balanced. *Id.* at 4989. In stark contrast, the legislative history makes absolutely no mention of the government's well-established adjudicatory role. Nor is there anything which might suggest, directly or indirectly, some perceived necessity for permitting rights to be vindicated against the sovereign when the latter errs in the course of adjudication. We take this silence to imply a lack of legislative interest, at the time EAJA was passed, in redesigning the processes already available for correction of judicial error. Put another way, the absence of any attempt to construct a balance between the public interest in safeguarding citizens' rights and the public interest in improving the techniques and results of adjudicatory practices is telling evidence that Congress did not intend to meddle with "pure" adjudication.

■ We also think it significant to recall that EAJA authorizes attorneys' fees with respect to *administrative* proceedings, 5 U.S.C. § 504 (1982 & Supp.IV 1986), as well as *judicial* proceedings, 28 U.S.C. § 2412. On the administrative side, fee awards may inure to prevailing parties only when "[a]n agency ... conducts an adversary adjudication." 5 U.S.C. § 504(a)(1). The law defines "adversary adjudication" as one "in which the position of the United States is represented by counsel or otherwise." *Id.*

at § 504(b)(1)(C). The legislative history underscores Congress's determination that, as respects administrative proceedings in which the government does not appear in an adversary role, sovereign immunity remains intact. The Conference Report issued when EAJA was first enacted explained that the statutory definition of "adversary adjudication" was intended to "preclude[ ] an award in a situation where an agency ... does not take a position in the adjudication." H.R.Conf.Rep. No. 1434, 96th Cong., 2d Sess. 23, *reprinted in* 1980 U.S.Code Cong. & Admin.News 5003, 5012. Congress regarded it as a matter of "basic fairness that the United States not be liable in an administrative proceeding" under such circumstances. H.R.Rep. No. 1418, *supra,* 1980 U.S.Code Cong. & Admin. News at 4991. The bare fact that an agency acting in an adjudicatory capacity rules against a private party, unjustifiably, is insufficient, absent the sovereign's adversary participation, to support a fee award under section 504. *Cf., e.g., Owens v. Brock,* 860 F.2d 1363, 1365–67 (6th Cir. 1988) (benefit determinations under Federal Employees Compensation Act do not constitute "adversary adjudications"); *Clifton v. Heckler,* 755 F.2d 1138, 1142–43 & n. 6 (5th Cir.1985) (proceedings before Social Security Administration do not comprise "adversary adjudications") (listing other cases to like effect); *Fidelity Constr. Co. v. United States,* 700 F.2d 1379, 1386 (Fed. Cir.) (discussing status of proceedings before board of contract appeals), *cert. denied,* 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 103 (1983).

In our opinion, these sentiments inform an enlightened interpretation of section 2412(d). The parallel administrative/judicial provisions should, we think, be construed in *pari passu.* In terms of court cases, the Act explicitly limits the sovereign immunity waiver to situations involving "civil action[s] ... brought by or against the United States." 28 U.S.C. § 2412(d)(1)(A). Congress's unmistakable intent to disallow fee awards for administrative proceedings in which the government is an adjudicator rather than an adversary casts a strong light upon the lan-

guage which Congress chose to use in regard to civil actions. We can hypothesize no sound reason why the government, *qua* nonadversarial adjudicator, should be treated differently vis-a-vis EAJA awards in judicial, as opposed to administrative, proceedings. We believe that Congress meant to be consistent throughout. *See* H.R.Rep. No. 1418, *supra,* 1980 U.S.Code Cong. & Admin.News at 4992 ("Section 2412(d) authorizes an award of reasonable fees and expenses in judicial proceedings analogous to the awards authorized in adversary adjudications under [5 U.S.C. § 504]."). In turn, consistency demands the conclusion that EAJA imposes precisely the same requirement of adversary status with respect to civil litigation as it does with respect to administrative proceedings.[4] We so rule.

## C. *Petitioners' Counter–Arguments.*

We have carefully considered all of petitioners' arguments in favor of a contrary result and have studied the cases upon which they rely. Although the matter is not free from doubt, we remain persuaded that EAJA was not intended to encompass "pure" adjudicators (like OSHRC). We deal *seriatim* with petitioners' major initiatives.

1. *Legislative Purpose.* Petitioners contend that EAJA's purpose of creating a better balance between citizens and sovereign, *see, e.g.,* H.R.Rep. No. 1418, *supra,* 1980 U.S.Code Cong. & Admin.News at 4984 (EAJA intended, in part, to reduce "disparity between the resources and expertise of ... individuals and their government"); *id.* at 4987 (EAJA designed to "plac[e] the Federal Government and civil litigants on a completely equal footing"), necessitates bringing purely adjudicative entities within EAJA's sphere. To us, this legislative purpose seems to cut in the opposite direction. Entities like OSHRC or a federal district court, by definition, can

never be on a "completely equal footing" with the parties over whose cases they preside. Adjudicators and litigants are distinct breeds—and fee-shifting will not paper over the genetic differences. Thus, it seems unlikely that a Congress concerned with eliminating disparities could have had purely adjudicative bodies in mind.

The conclusion that EAJA did not address this form of "genetic" inequality derives support from another part of the legislative history. Congress enacted EAJA with the aim of holding "the United States ... to the same standard in litigating as *other parties.*" H.R.Rep. No. 1418, *supra,* 1980 U.S.Code Cong. & Admin.News at 4996 (emphasis supplied). That is litigant language, strongly suggesting the Act was meant to equalize the position of a private party vis-a-vis the government only when the two were opponents in a civil action. We know of no way to conduct a meaningful judicial-type hearing while holding the judge to the same standards as the litigants. The government *qua* adjudicator is, quite simply, a breed apart.

Nor does the 1985 legislative history support the assertion that the broad purpose of encouraging challenges to unreasonable government action would be undermined if attorneys' fees could not be awarded against adjudicative entities such as OSHRC. Petitioners think they have found live ammunition in H.R.Rep. No. 120, a document which criticized both courts and federal agencies for construing EAJA too grudgingly. *E.g., id.,* 1985 U.S.Code Cong. & Admin.News at 137. Yet, they are firing blanks. Congress's criticism was explicitly confined to how judges and administrators had construed two particular terms: "position of the United States" and "substantially justified." *Id.* at 137–38. It distorts reality to proclaim that this dissatisfaction was directed at a too-parochial view of the class of agencies amenable to fee awards

**4.** *Sullivan v. Hudson,* —— U.S. ——, 109 S.Ct. 2248, 104 L.Ed.2d 941 (U.S.1989), is not to the contrary. There, the Court permitted an EAJA award for fees incurred in nonadversarial administrative proceedings undertaken on remand following a citizen's successful pursuit of adversarial judicial review. *Id.* at —— U.S. at ——, 109 S.Ct. at 2258. In such circumstances, "the proceedings on remand are an integral part of the 'civil action' for judicial review," *id.* at —— U.S. at ——, 109 S.Ct. at 2257–58, itself adversarial, thus opening the door for an EAJA award. The case before us is not built to such a last.

under EAJA. Indeed, the failure of the 1985 Report to discuss that subject *at all* counts in OSHRC's favor.

■ 2. *Party Status.* Petitioners urge that a different result is mandated because OSHRC was named as a respondent and answered the mandamus petition. Unless we are prepared to sacrifice substance and exalt form, however, the circumstance that mandamus was employed and OSHRC named should not prove determinative. OSHRC was a party in name only. *See United States v. Haldeman,* 559 F.2d 31, 138 (D.C.Cir.1976) (where sole purpose of mandamus petition is to contest intrinsic merits of a judicial act, the judge is at most a nominal party), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977); *United States v. King,* 482 F.2d 768, 772 & n. 24 (D.C.Cir.1973) (similar); *Walker v. Columbia Broadcasting System, Inc.,* 443 F.2d 33, 34 (7th Cir.1971) (similar); *General Tire & Rubber Co. v. Watkins,* 363 F.2d 87, 88–89 (4th Cir.) (en banc) (similar), *cert. denied,* 385 U.S. 899, 87 S.Ct. 204, 17 L.Ed.2d 131 (1966); *Rapp v. Van Dusen,* 350 F.2d 806, 812–13 (3d Cir.1965) (similar); *see also In re Justices of Supreme Court of Puerto Rico,* 695 F.2d 17, 23 (1st Cir. 1982) (usually, where judge is named as defendant in mandamus case, he is merely "a formal participant"); *cf.* 1st Cir.Loc.R. 21 (to the extent that a mandamus petition seeks relief referable to judicial act, "unless otherwise ordered the judge shall be represented pro forma by counsel for the party opposing the relief"). OSHRC— which had no more interest in the outcome of the mandmus proceeding than a trial court has in the losing party's appeal of an adverse verdict—was not petitioners' party-opponent in the sense contemplated by EAJA's framers.[5]

3. *The 1985 Amendments.* Petitioners attempt to show that, even if EAJA did not

initially swell to include purely adjudicatory bodies, such a tumefaction occurred in 1985, when EAJA was reenacted, amended, and made permanent. The 1985 amendments undertook for the first time to define the phrase "position of the United States." Petitioners asseverate that, in doing so, Congress swept adjudicators into the EAJA net. But, the amendment's evolution reveals no such intent.

In defining the phrase, "position of the United States," Congress explained that "[c]ourts have been divided" on whether the term "referred to the agency action which was the subject of the lawsuit or only the government's litigation position." H.R.Rep. No. 120, *supra,* 1985 U.S.Code Cong. & Admin.News at 135. The 1985 amendments removed all doubt, stipulating that both the underlying action and the government's litigation position must be "substantially justified." *See Sierra Club v. Secretary of the Army,* 820 F.2d at 517 (1985 amendments dispelled earlier uncertainty and established definitively that the "position" which must be justified comprises both the agency's position and the government's ensuing litigation position); *see also* H.R.Rep. No. 120, *supra,* 1985 U.S.Code Cong. & Admin.News at 137 (amendment was thought necessary to "clarif[y] that the broader meaning applies").

In retrofitting the terminology, Congress took dead aim at the controversial holding in *Spencer v. NLRB,* 712 F.2d 539 (D.C.Cir. 1983), *cert. denied,* 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984). In *Spencer,* the District of Columbia Circuit held that the government could escape EAJA liability so long as its "litigation position" was "substantially justified," whether or not the agency's "underlying action" had been "substantially justified." *Id.* at 557. Congress flatly rejected *Spencer,* bundling the underlying action and the sovereign's liti-

---

5. We cannot draw a contrary inference merely because OSHRC filed a response to the petition. In the first place, we ordered OSHRC to respond. In the second place, OSHRC refrained from taking any position on the intrinsic merits of the gag order or consequent exclusion. In contrast to GenDy's response defending the propriety of the ALJ's rulings, the Commission lim-

ited its reply to its institutional interests, questioning the wisdom of mandamus as a surrogate for appellate review, but going no further. Because OSHRC did not cross the line from adjudication to advocacy, we need not decide what effect (if any) an adjudicator's voluntary assumption of an advocacy role or full-blown party status might have in terms of EAJA liability.

gation stance into a single EAJA package, and requiring the government to justify both.

This clarification—and it was merely a clarification, not a turnabout [6]—cannot fairly be read to imply an intent to extend EAJA to purely adjudicatory entities. Because the underlying action may often have been taken by the very same agency that thereafter appears in the subsequent litigation—as was true in *Spencer*—specifically including underlying agency actions within the "position" rubric signifies no necessary plan to ensnare purely adjudicative entities (which by definition do not take "litigation positions") within the toils of the Act. The point, we think, is quickly placed beyond peradventure by a review of the cases cited in the legislative history. *See* H.R.Rep. No. 120, *supra*, 1985 Cong. & Admin.News at 140 n. 21. In each and all of them, the underlying position was taken by a government agency acting in a regulatory or enforcement capacity. *See, e.g., Ashburn v. United States*, 740 F.2d 843 (11th Cir.1984) (IRS); *United States v. 2,116 Boxes of Boned Beef*, 726 F.2d 1481 (10th Cir.) (Department of Agriculture), *cert. denied*, 469 U.S. 825, 105 S.Ct. 105, 83 L.Ed.2d 49 (1984). Not a single case involved an "underlying position" taken by a purely adjudicative body.[7] Nothing in the congressional annals intimates in the slightest that Congress's fine-tuning of the "position" language was designed to expand EAJA's coverage to include purely adjudicative entities.

4. *Petitioners' Cases.* Petitioners fare no better when marshalling the caselaw which they claim supports their interpretation of EAJA. We discuss briefly the deci-

sions featured most prominently in petitioners' armamentarium.

In *Pulliam v. Allen*, 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984), the Supreme Court held that the doctrine of judicial immunity did not bar a fee award under 42 U.S.C. § 1988. *Id.* at 544, 104 S.Ct. at 1982. But, *Pulliam* was concerned with the scope of *judicial* immunity—a judge-made construct dating back to common law. The Court determined that Congress, in enacting section 1988, intended to make attorneys' fees "available in *any* action to enforce a provision of [42 U.S.C.] § 1983...." *Id.* at 543, 104 S.Ct. at 1981 (emphasis supplied). Thus, the Justices declined to extend the common-law doctrine in a manner which would thwart Congress's discernible intent.

■■■ Building on *Pulliam*, petitioners argue that immunity "should not be implied in the absence of clear legislative intent." Petitioners' Brief at 17. Their logic is anfractuous—and wrong. Where Congress has legislated in a permissible fashion, the courts' allegiance must be to effectuating the legislative scheme. Therefore, personal common-law immunities—which Congress can lawfully override if it chooses to do so—must bend to the congressional will. It follows, then, that a judge's common-law immunity must yield in respect to a statute like 42 U.S.C. § 1988. It does not follow—indeed, it stands reason on its head—to suggest that a kindred approach be employed where, as here, the government's sovereign immunity, rather than a judge's personal immunity, is at stake.

■■■ The federal sovereign is immune from an award of attorneys' fees in

---

**6.** Notwithstanding *Spencer* and cases to like effect, other courts had held that the government had the burden of justifying both its underlying position and its litigation position. *See, e.g., Rawlings v. Heckler*, 725 F.2d 1192, 1195–96 (9th Cir.1984); *Natural Resources Defense Council v. EPA*, 703 F.2d 700, 706–07 (3d Cir.1983). The 1985 amendments merely resolved the split in the decided cases, clarifying that *Spencer* was wrong and that decisions like *Rawlings* were right.

**7.** *Tyler Business Services, Inc. v. NLRB*, 695 F.2d 73 (4th Cir.1982), is no exception. The National Labor Relations Board, unlike OSHRC, is not

solely an adjudicator. *See, e.g.,* 29 U.S.C. §§ 156, 160. *Tyler* helps the respondent in that the Fourth Circuit carefully distinguished between the actions of an adjudicative board and its general counsel, and held that only the latter were relevant to an EAJA application. 695 F.2d at 76. By the same token, *Tyler* does not assist petitioners because it was not this aspect of the opinion which left a sour taste in the legislative mouth. *See* H.R.Rep. No. 120, *supra*, 1985 U.S. Code Cong. & Admin.News at 137 n. 14 (criticizing *Tyler* for requiring justification of government's litigation position, without regard to government's underlying position).

the absence of a statute to the contrary. *See Ruckelshaus,* 463 U.S. at 685, 103 S.Ct. at 3277; *Alyeska Pipeline,* 421 U.S. at 267–68 & n. 42, 95 S.Ct. at 1626 & n. 42. Whereas common-law immunities may be vitiated by fair implication, *see, e.g., Mason v. Southern New England Conf. Ass'n,* 696 F.2d 135, 138 (1st Cir.1982) (state statute held to abrogate common-law immunity afforded eleemosynary institutions); *Kenler v. Canal Nat'l Bank,* 489 F.2d 482, 485 n. 3 (1st Cir.1973) (U.C.C. abrogates common-law immunity of transfer agents from shareholder's suit), the matter remains one of deciphering legislative intent. *See Colon Berrios v. Hernandez Agosto,* 716 F.2d 85, 89 (1st Cir.1983) (upholding common-law legislative immunity absent discernible congressional intent to override). To work abrogation of federal sovereign immunity, however, the legislative intent must be so clear and explicit as to brook no reasonable doubt. *See, e.g., Ruckelshaus,* 463 U.S. at 685, 103 S.Ct. at 3277 (waiver of sovereign immunity "must be 'construed strictly in favor of the sovereign'" and not "'enlarge[d] ... beyond what the language requires'") (internal citations omitted); *Block v. North Dakota ex rel. Bd. of Univ. and School Lands,* 461 U.S. 273, 287, 103 S.Ct. 1811, 1819, 75 L.Ed.2d 840 (1983) ("when Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be strictly observed, and exceptions thereto are not to be lightly implied"). This principle applies full bore in the EAJA context. *See Boudin,* 732 F.2d at 1114–15 (because surrender of sovereign immunity must be "unequivocal and explicit," only question is whether Congress "clearly manifested its affirmative intention" to include particular types of actions within EAJA); *see also Barry v. Bowen,* 825 F.2d 1324, 1331–32 (9th Cir.1987) (to be effective, disclaimer of

sovereign immunity "must be explicitly and unequivocally expressed"); *Unification Church v. INS,* 762 F.2d 1077, 1089 (D.C. Cir.1985) (similar); *Lane,* 727 F.2d at 20–21 (similar); *Fidelity Constr. Co.,* 700 F.2d at 1385 (to overcome the federal sovereign's immunity, a court must "find specific statutory language that *expressly* authorizes such an award") (emphasis in original).

In sum, there is a fundamental distinction at work. Civil rights statutes like 42 U.S.C. §§ 1983, 1988 are to be construed generously to effectuate their salutary purposes, *see, e.g., Williams v. City of Fairburn,* 702 F.2d 973, 976 (11th Cir.1983) (§ 1988 should be broadly interpreted to effectuate remedial purposes); *Collins v. Chandler Unified School Dist.,* 644 F.2d 759 763–64 (9th Cir.) (similar), *cert. denied,* 454 U.S. 863, 102 S.Ct. 322, 70 L.Ed.2d 163 (1981); *Mid Hudson Legal Services, Inc. v. G & U, Inc.,* 578 F.2d 34, 37 (2d Cir.1978) (similar); and the course of such construction may require, as in *Pulliam,* that personal immunities be submerged. Conversely, statutes which, like EAJA, constitute a surrender of federal sovereign immunity must be construed narrowly; consequently, the government's immunity cannot be overridden except where a plain congressional intent to do so can be shown. This fundamental distinction leads inexorably to a trio of conclusions: (1) that this case and *Pulliam* are not fair congeners; (2) that *Pulliam,* in its methodology and substantive result, has little or no relevance to the question *sub judice;* and (3) that, inasmuch as EAJA sends no clear signal that Congress meant to jettison the sovereign immunity enjoyed by federal adjudicators like OSHRC, petitioners' quest must fail.[8]

Petitioners' second main case is *Guerrero v. Marsh,* 819 F.2d 238 (9th Cir.1987). In *Guerrero,* the Ninth Circuit held that a mandamus petition was not untimely and required the Board of Correction of Mili-

---

**8.** Although perhaps supererogatory, it ought to be noted that EAJA is different in scope and purpose from 42 U.S.C. § 1988. One difference is that *all* plaintiffs who prevail in section 1983 actions are eligible for the balm of section 1988. *See Pulliam,* 466 U.S. at 543, 104 S.Ct. at 1981. The availability of attorneys' fees against the federal government under EAJA is much less expansively expressed. There is no *automatic* shifting of fees comparable to that which occurs

under section 1988. *See Sierra Club v. Secretary of the Army,* 820 F.2d at 516–17. The legislative history explains that the standard adopted for EAJA awards "represents an acceptable middle ground," short of automatic bestowal of fees. H.R.Rep. 1418, *supra,* 1980 U.S.Code Cong. & Admin.News at 4993. Thus, it is not in the least anomalous that Congress would have crafted EAJA to reach regulators and enforcers, but to leave purely adjudicative entities to one side.

tary Records to consider petitioner's request that his army status be redefined. *Id.* at 242. The court added that petitioner "may apply" for attorneys' fees under EAJA. *Id.* From aught that appears, the court never considered or passed upon the question of whether attorneys' fees could be awarded against the Board. In any event, the Board, unlike OSHRC, is not an adjudicatory entity, but merely a body through which the Army Secretary acts. *See* 10 U.S.C. § 1552(a); *see also Armstrong v. United States*, 205 Ct.Cl. 754, 764 (1974) (Board's responsibilities do not include conducting adversary proceedings).

Petitioners also cite three cases arising in the context of the Social Security Act: *Garcia v. Schweiker*, 829 F.2d 396 (3d Cir. 1987); *Edge v. Schweiker*, 814 F.2d 125 (3d Cir.1987); *Herron v. Bowen*, 788 F.2d 1127 (5th Cir.1986). These cases are totally inapposite. The Social Security Act, unlike the Safety/Health Act, places both regulatory and adjudicatory responsibility in the same hands. *See, e.g.,* 42 U.S.C. § 405(a), (b). Thus, in each of the cited cases, the "position of the United States" comprised the Secretary's position both in denying benefits and in defending the denial on appeal. *E.g., Garcia*, 829 F.2d at 399–400; *Edge*, 814 F.2d at 129; *Herron*, 788 F.2d at 1130–32. Concisely stated, although EAJA did not extend to the adjudications conducted by the Social Security Administration, *see, e.g., Clifton*, 755 F.2d at 1142–43, once the Secretary of Health and Human Services took an adversarial position in the ensuing appeals, EAJA's gears were engaged exactly as Congress had intended. *See id.* at 1143 ("legislative history ... indicat[es] that Congress intended the EAJA to cover civil actions to review decisions of the Secretary") (quoting H.R.Rep. No. 1418, *supra,* 1980 U.S.Code Cong. & Admin.News at 4991). That scenario, of course, is inapt here. OSHRC, as we have pointed out, is a purely adjudicative entity which does not have the responsibility for defending its own decisions when judicial review eventuates.

## IV. CONCLUSION

To recapitulate, we have been able to find no clear indication of a congressional intent to extend EAJA liability to purely adjudicative entities. Although the wording of the Act seems to leave the question open, the legislative purpose and history strongly suggest that Congress did not have adjudicatory functions in mind when enacting EAJA or when later amending it. And, any doubt must be resolved in favor of nonapplicability since courts are duty bound to construe stingily waivers of the federal government's sovereign immunity.

OSHRC is such a creature: a purely adjudicative board. It is not adversarial in the requisite EAJA sense; that is to say, when—as in this case—a litigant seeks to overturn a Commission ruling, OSHRC is at most a nominal party (not charged with defending the correctness of the decision). Moreover, as a "pure" adjudicator, OSHRC is bereft of policymaking responsibilities and uninvolved in regulation or enforcement activities. In light of these considerations, EAJA is not a natural habitat for attorneys' fee applications levelled against the Commission.

We need go no further. While petitioners were entitled to employ mandamus to correct a glaring wrong and vindicate rights assured to them by the Constitution, EAJA does not serve to shift the expenses of their effort—though it was successful—to the erring adjudicator.

*Motion for fees denied.*

### APPENDIX

United States Courts of Appeals

for the First Circuit

#### ORDER OF COURT

ENTERED: February 6, 1989

Petitioners have moved for an award of attorneys' fees and costs under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. We interpret the motion as directed only against respondent Occupational Safety and Health Review Commission (OSHRC) and not against the federal Department of Labor. OSHRC has objected.

We reject out of hand OSHRC's contention that the EAJA application is untimely or is merely a petition for rehearing masquerading as a fee application. The remaining ground of OSHRC's objection,

however, appears to present a more substantial question, one of potentially pervasive importance.

As we see it, the issue has three parts: (1) Can a purely adjudicative governmental entity, like OSHRC, ever be held to suffer a fee award under the EAJA? (2) If so, under what circumstances? (3) Lastly, if such an award can lawfully be made, is one appropriate in this instance?

Because of the likely importance of the question, and the apparent lack of controlling precedent, we ask that the parties formally brief the three parts of the issue described in the preceding paragraph. In the course thereof, without limiting the generality of the foregoing, they should furnish us their insights into (a) what *statutory* difference it makes, under EAJA, whether an agency is "purely adjudicative" or not; (b) the effect (if any) of the 1984 amendments to the EAJA, especially 28 U.S.C. § 2412(d)(2)(D) (1985), on the issue presented; and (c) whether OSHRC's lack of a quorum could validly be considered as a "special circumstance[ ]" as that term is used in the EAJA? *See* 28 U.S.C. § 2412(d)(1)(A) (1985).

In view of the fact that the issue before us may well implicate government agencies other than OSHRC, we ask that the Justice Department, in filing its brief on OSHRC's behalf, certify that the position asserted on this motion is the position of the Department of Justice generally, which the Department believes is correct in respect to all other agencies similarly situated.

The briefing schedule shall be as follows: Petitioners are to file their opening brief within 20 days of the date of this order. Respondent is to file its brief within 40 days of the date of this order. Petitioners, if they so elect, may file a reply brief within 10 days thereafter.

The case will be scheduled for oral argument on May 3, 1989 on the regular argument calendar.