George W. Draper III, Judge
I respectfully dissent. The principal opinion holds that Karen Carpenter (hereinafter, “Ms. Carpenter”) is ineligible for attorney’s fees because the discipline imposed by the State Board of Nursing (hereinafter, “the Board”) was a purely adjudicatory “decision” that cannot constitute a “position” advocated for by the Board at the disciplinary hearing. The principal opinion acknowledges that the Board assumed an active adversarial role and sought to discipline Ms. Carpenter’s license. The principal opinion, however, concludes that the Board managed to advocate for no “position” whatsoever by declining, to request a specific sanction. The net result is that administrative agencies can now run roughshod over Missouri citizens and avoid liability for attorney’s fees by simply instructing agency attorneys to remain coy regarding the preferred sanction while, at the same time, the agency zealously litigates the case against its target.
The principal opinion’s rationale begins with distinction drawn in Garland v. Ruhl, 455 S.W.3d 442 (Mo. banc 2015), between an agency “position” and an agency “decision.” In Garland, this Court held that *120 that there was no “agency proceeding” in which attorney’s fees could be awarded because the Family Support Division (hereinafter, “FSD”) was not a party to the underlying child support dispute, was not represented by counsel, and acted solely as the adjudicator. Id. at 448. Although Garland held that attorney’s fees were unavailable because there was no “agency proceeding,” this Court went on to discuss the general distinction between an agency “decision” and an agency “position” asserted during an agency proceeding. This Court observed that attorney’s fees may be awarded when a party successfully challenges an agency’s litigation “position,” but fees cannot be awarded when a party successfully challenges an agency’s adjudicatory “decision.” Id.
Drawing a bright-line distinction between an agency’s litigation “position” and an agency’s “decision” makes sense when, as in Garland, the agency at issue assumes a non-adversarial, purely adjudicatory role. In Garland, it was impossible for FSD to take a litigation “position” because FSD was not a party to any “agency proceeding.” Id. Instead, FSD acted solely as an adjudicator whose only responsibility was to make a “decision.” Thus, the distinction drawn in Garland between an agency “position” and an agency “decision” does nothing more than reflect the necessary truth that a purely adjudicative entity by definition takes no “position” and can do nothing more than render a “decision.”[1]
The principal opinion imports the Garland distinction from its narrow, fact-specific origins and applies it to the fundamentally different facts of this case. Unlike Garland, this case involves an adversarial agency proceeding in which, as the principal opinion acknowledges, the Board “took an active role at the disciplinary hearing by presenting evidence, cross-examining witnesses and making opening and closing arguments to the Board.” The Board’s “active role” was not happenstance. Unlike the purely adjudicatory roles of the agencies in Garland and Perry, the Board is statutorily obligated to both adopt and enforce nursing regulations Section 335.036. As this case illustrates, the Board’s statutory obligation to enforce nursing regulations requires the Board both to prosecute alleged offenders and to determine the appropriate discipline. Therefore, as a matter of law, the Board in this case cannot operate in a purely adjudicatory role. The distinction drawn in Garland between an agency “position” and an agency “decision” is irrelevant to this case.
The principal opinion’s reliance on Garland is not only unwarranted by the actual facts and holding in Garland, it also overlooks the fact that legal rights are altered by an agency’s “decision” and not by an *121 agency’s litigation “position.” Therefore, it will always be the case that an aggrieved party, such as Ms. Carpenter, will be seeking relief from the agency’s decision. If, as the principal opinion reasons, an agency “decision” in an adversarial agency proceeding is wholly independent of the agency’s “position” so long as the agency’s attorney declines to request a specific sanction, then the statutory right to recover attorney’s fees for successfully fending off abusive agency overreach is practically a thing of the past. This unnecessary result can be avoided by simply recognizing that the bright-line distinction drawn in Garland between an agency “position” and an agency “decision” stemmed from the unique position of the agency in that case as a pure adjudicator. Rather than holding that the Board is an advocate without a position, the more reasonable conclusion is to recognize that the Board, in its advocacy role, took a “position” by advocating that the Board, in its adjudicatory role, enter a “decision” imposing discipline on Ms. Carpenter’s license. This conclusion is reflected in the plain language of section 536.087, RSMo 2000,[2] and is confirmed by the Board’s admission that it took a position by advocating for discipline to be imposed on Ms. Carpenter’s license.
Section 536.087 does not refer to the agency’s “positions.” The statute refers to the singular “position” of the agency. The principal opinion ignores the Board’s overall, singular “position” that Ms. Carpenter’s license should be disciplined and, instead, focuses on the fact the Board’s attorney never requested a specific sanction at the disciplinary hearing. The implication is that courts must sift through the agency’s overall, singular “position” to determine whether the agency specifically advocated for the specific sanction that the agency ultimately imposed. This rationale confuses the specific arguments or assertions advanced by an agency with the agency’s overall “position.” For this reason, federal courts have recognized, in the context of analyzing the justification for an agency’s position under the analogous federal Equal Access to Justice Act, that the agency’s “position” is assessed by reviewing the “overall objectives of the government” rather than focusing on the “specific, isolated issues” in the case. See Roanoke River Basin Ass’n v. Hudson, 991 F.2d 132, 139-40 (4th Cir. 1993) (defining the agency’s position by noting that the “overall position of the Army Corps of Engineers was its decision to grant a permit for construction of a pipeline”). “While the parties’ postures on individual matters may be more or less justified, the EAJA—like other fee-shifting statutes— favors treating a case as an inclusive whole, rather than as atomized line-items.” Commissioner, INS v. Jean, 496 U.S. 154, 161-62, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990). The principal opinion ignores the fact that the Board’s singular overall “position” was to discipline Ms. Carpenter’s nursing license and, instead, focuses on the Board’s decision to remain coy about the preferred sanction even as it took an “active role” in advocating for discipline. What is left is the incongruous conclusion that the Board took an “active role” in advocating for nothing.
Any doubt as to the Board’s “position” is removed by the fact that the Board admitted that its “position” during the AHC hearing was that Ms. Carpenter’s license was subject to discipline. To avoid the consequences of this admission, the Board now argues that it took no “position” at the disciplinary hearing because it was acting solely as an adjudicator. Section 621.145, however, requires this Court to treat the *122 AHC hearing and the Board’s disciplinary hearing as a single administrative proceeding. Thus, the Board’s admission that its effort to discipline Ms. Carpenter’s license during the AHC hearing constituted a “position” is equally applicable to the disciplinary hearing in which the Board’s attorney took an “active role” in advocating the Board’s position that Ms. Carpenter’s license should be disciplined. Rather than concluding that the Board took an “active role” in advocating no position whatsoever, I would hold the Board to its admission.
The judgment should be reversed. As the principal opinion correctly concludes, Ms. Carpenter was a prevailing party. As the circuit court determined, the particulars of the Board’s disciplinary order were excessive and unreasonable. By reducing the term of her probation and setting aside some of the conditions of that probation, Ms. Carpenter prevailed, in part, against the Board’s overall “position” that her license should be disciplined. In short, Ms. Carpenter is entitled to recover her attorney’s fees pursuant to section 536.087.

. The limited application of the Garland distinction is not only dictated by the facts of the case, but it also is confirmed by the sole authority cited to support the distinction between agency positions and agency decisions. Garland cited In re Stephen C. Perry, 882 F.2d 534, 540 (1st Cir.1989), for the proposition that an administrative adjudicator cannot be liable for attorney’s fees if its adjudicatory decision is incorrect. In Perry, the agency at issue was a "purely adjudicative entity” that had "no stake in the outcome of the litigation.” Id. at 536. The Perry court emphasized that the agency at issue "differs from the conventional agency model in that it is purely an adjudicator; there is no intermixing of regulatory, prosecutorial, and adjudicative functions.” Id. at 537. As a purely adjudicative entity, the agency "by definition” could not take a litigation position. Id. at 543. Thus, Perry held that the attorney’s fees provisions of the federal Equal Access to Justice Act did not apply to "purely adjudicative entities.” Id. at 545. The facts of Garland, and its reliance on Perry, demonstrate that the general distinction between an agency "decision” and an agency "position” is inapplicable to a case in which the agency is both an advocate and adjudicator and, by definition, has a stake in the outcome of the litigation.

. All further statutory references are to RSMo 2000.