Raymond J. DONOVAN, Secretary of Labor, Petitioner,

v.

A. AMORELLO & SONS, INC., and Occupational Safety and Health Review Commission, Respondents.

No. 84–1568.

United States Court of Appeals, First Circuit.

Heard Jan. 8, 1985.

Decided May 8, 1985.

---

Elizabeth S. Woodruff, U.S. Dept. of Labor, Washington, D.C., with whom Francis X. Lilly, Sol. of Labor, Frank A. White, Associate Sol., Washington, D.C., for Occupational Safety and Health, Judith N. Macaluso, Arlington, Va., Asst. Counsel for Appellate Litigation, and Albert H. Ross, Regional Sol., Dallas, Tex., were on brief for petitioner.

William J. LeDoux, Worcester, Mass., with whom Bowditch & Dewey, Worcester, Mass., was on brief for respondents.

* Of the District of Maine, sitting by designation.

Before CAMPBELL, Chief Judge, BREYER, Circuit Judge, and GIGNOUX,* Senior District Judge.

BREYER, Circuit Judge.

The Occupational Health and Safety Administration charged A. Amorello & Sons, Inc. with violating an OSHA regulation, which states:

> No employer shall permit earthmoving ... equipment which has an obstructed view to the rear to be used in reverse gear unless the equipment has in operation a reverse signal alarm distinguishable from the surrounding noise level or an employee signals that it is safe to do so.

29 C.F.R. § 1926.602(a)(9)(ii). The administrative body that adjudicates these disputes (called the Occupational Safety and Health Review Commission, or "OSHRC") found for Amorello. The Commission's ALJ apparently did not believe the OSHA inspectors when they said that Amorello's "front-end loader" had been operated without an alarm sounding. On appeal the Commission affirmed the ALJ, 2–1, but it gave different reasons (from those of the ALJ) for doing so. OSHRC's Chairman wrote that the front-end loader has so minor "an obstructed view·to the rear" that the regulation does not apply. The concurring Commissioner wrote that the "obstructed view" extends no more than two feet from the machine's back end; the inspectors did not see the machine operate during its first two feet of backward motion; and thus they could not know the alarm was not then working. OSHA (or, rather, OSHA's hierarchical chief, the Secretary of Labor) asks us to reverse OSHRC. 29 U.S.C. § 660(a). We agree with the Secretary that the reasoning of both majority members of OSHRC is incorrect as a matter of law. And, we remand the case to the Commission.

I

■ a. We turn first to the Chairman's rationale, namely that the earthmoving ma-

chine in question, a front-end loader, falls outside the scope of the regulation's phrase "equipment which has an obstructed view to the rear." At the outset, the Secretary claims that OSHRC's procedural rules forbade the Chairman to rest his decision on this ground. Those rules allow OSHRC to consider only the "issues specified" in the review petition, 29 C.F.R. § 2200.92(c); and the Secretary's petition seeking review of the ALJ's decision did not mention the question of the regulation's interpretation. Nonetheless, as a technical matter, the regulation allows broader review where "the order for review expressly [so] provides." *Id.* The "order for review" (as distinct from the "petition for review") said OSHRC would review "all issues *raised* by the petition." App. at 28 (emphasis added). And the Secretary's position can be read fairly to "raise" those issues necessarily involved in accepting or rejecting the ALJ's finding that Amorello did not violate the "back-up alarm" regulation. As a practical matter, the Commission simply acted like an appellate court, free to affirm a decision that is legally correct though for a reason other than that given by the court below. *See SEC v. Chenery Corp.,* 318 U.S. 80, 88, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943). The Commission is free to interpret its own procedural regulations to allow this practice, *see Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965), particularly where, as here, the parties had addressed the substantive issue (*i.e.,* whether the front-end loader had an obstructed view) earlier in the proceedings.

b. The more difficult question concerns, not OSHRC's interpretation of its own procedural regulation, but rather its Chairman's interpretation of OSHA's substantive regulation. This question is legally interesting because, unlike many administrative agencies, OSHA does not itself possess all three traditional administrative powers—legislative (rulemaking), prosecutorial, and adjudicative. *Compare, e.g.,* 15 U.S.C. §§ 41 et seq. (establishing Federal Trade Commission with all three powers); 15 U.S.C. §§ 77s–77u (same, Securities and Exchange Commission); 47 U.S.C. §§ 151

et seq. (same, Federal Communications Commission); *see also* Administrative Procedure Act, 5 U.S.C. § 554(d) (providing for separation of adjudicative and prosecutorial personnel in administrative agencies); *see generally* Asimow, *The Curtain Falls: Separation of Functions in the Federal Administrative Agencies,* 81 Colum.L.Rev. 759 (1981). Instead, Congress gave OSHA the power to make safety rules and to enforce them; but it gave OSHRC, an independent administrative body, the power to adjudicate violations of OSHA's rules and regulations. That fact—that OSHA's rules are the proper concern of not one but two separate administrative bodies—creates a dilemma for a court, at least when those bodies differ about the proper interpretation of a rule. Whose opinion about the rule's meaning is entitled to greater weight? OSHA's? OSHRC's? Or should the court make up its mind independently about the rule's meaning?

■ Without this special structural dilemma—i.e., were OSHA alone charged with both rulemaking and adjudication—the problem of the rule's proper meaning would not be legally difficult. Since there is no factual dispute here about the characteristics of the front-end loader, the question is simply one of interpreting the rule's words: do they fit the undisputed facts? Courts must allow agencies to interpret their own rules, at least where those interpretations are reasonable. *See Udall v. Tallman, supra,* 380 U.S. at 16, 85 S.Ct. at 801 ("When faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration: . . . When the construction of an administrative regulation rather than a statute is in issue, deference is even more clearly in order."); *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 565, 100 S.Ct. 790, 796, 63 L.Ed.2d 22 (1980) (courts should defer to agency's interpretation of its regulation "unless demonstrably irrational"). And in deciding what is reasonable, courts must take account of the agency's likely greater knowledge of the

rule's intended purpose and the agency's practical understanding of how competing interpretations may affect the agency's regulatory mission. *See Mayburg v. Secretary of Health and Human Services*, 740 F.2d 100, 105–107 (1st Cir.1984); *see generally* Weaver, *Judicial Interpretation of Administrative Regulations: An Overview*, 53 U.Cinn.L.Rev. 681 (1984).

■ OSHA's interpretation of its regulation here is reasonable. The pictures and testimony make clear that the engine housing at the back of the front-end loader rises off the ground to a height somewhat above the head of a person standing directly behind the machine. A driver of the machine, seated in the cabin above but in front of this housing, could not see someone standing within two feet of the machine's back end. The driver's visibility is even more limited, of course, with respect to someone sitting or bending over his tools or someone standing on lower ground. OSHA's conclusion—that the driver has an "obstructed view" and, when reversing, must warn anyone just behind—strikes us as a sensible interpretation of its rule.

Amorello argues that this interpretation means *all* earthmoving machinery has an "obstructed view"; hence it renders meaningless OSHA's decision to modify its original proposed version of § 1926.602(a)(9)(ii) (which required the use of a backup alarm on *all* earthmoving equipment) by adding the words "with an obstructed view to the rear." Those words have meaning, says Amorello, only if they are meant to exempt from the rule vehicles with comparatively minor obstructions. OSHA replies that these words are meant to exempt only equipment with no obstruction, or at best no more than a *de minimis* obstruction. OSHA no longer argues that the loader's exhaust pipe constitutes an obstruction. Under these circumstances, OSHA's reply seems reasonable.

The interesting question in this case is whether we must revise our conclusion in light of the fact that OSHRC—also an expert administrative body—has reached a different conclusion about the meaning of the rule. The courts of appeals differ about the proper judicial attitude when OSHRC and OSHA are at odds about a regulation's meaning. The Fourth Circuit, the Sixth Circuit, the Eighth Circuit, and possibly the Second Circuit seem to favor the Commission (OSHRC). *See Brennan v. Gilles & Cotting, Inc.*, 504 F.2d 1255, 1262 (4th Cir.1974) ("[T]he Commission was designed to have a policy role and its discretion therefore includes some questions of law."); *Usery v. Hermitage Concrete Pipe Co.*, 584 F.2d 127, 132 (6th Cir.1978) ("Where ... the Secretary of Labor and the Commission differ over the construction of the Act, ... the Commission's ruling is entitled to great deference."); *Brennan v. OSHRC*, 513 F.2d 713, 716 (8th Cir.1975) ("[W]here the Commission has given the regulation an interpretation well within the plain meaning of its terms, we cannot say that the Commission's reading is unreasonable."); *see also Brennan v. OSHRC*, 491 F.2d 1340, 1344 & n. 12 (2d Cir.1974) (describing as "simplistic" the view that "the meaning of a regulation might best be fathomed by its author, here the Secretary."); *Marshall v. Western Electric, Inc.*, 565 F.2d 240, 244 (2d Cir. 1977) (where OSHA and OSHRC disagree, reviewing court's "role 'is to decide whether the Commission's interpretation of the Regulation is unreasonable and inconsistent with its purpose' ") (citations omitted). The Fifth and Tenth Circuits, however, favor the Secretary (OSHA). *See Brennan v. OSHRC*, 513 F.2d 553, 554 (10th Cir. 1975) ("[T]he interpretation argued for by the Secretary should be accepted by us if it be a reasonable one."); *Brennan v. Southern Contractors Service*, 492 F.2d 498, 501 (5th Cir.1974) ("[T]he Secretary is authorized to promulgate regulations, ... [and] the promulgator's interpretation is controlling as long as it is one of several reasonable interpretations, although it may not appear as reasonable as some other."). And, the Third Circuit seems to believe that the administrative conflict frees the courts to interpret the regulation independently. *See Bethlehem Steel Corp. v. OSHRC*, 573 F.2d 157, 160 (3rd Cir.1978) (when OSHA

and OSHRC disagree on the meaning of a regulation, a reviewing court should choose the interpretation that appears most reasonable within "the plain wording" of the regulation). This circuit has not previously addressed the question.

After examining the relevant statutes and their legislative history, we side with those circuits that favor the Secretary's interpretation (assuming, of course, it is reasonable) in disputes with the Commission over the meaning of the Secretary's regulations. We have two related reasons for believing that courts should continue to give great weight to the Secretary's reasonable interpretation of a typical OSHA regulation even in the face of an OSHRC interpretation to the contrary.

First, we believe this is what Congress intended. When the bill that later became the Occupational Health and Safety Act emerged from the Senate Committee on Labor and Public Welfare in 1970, it called for a more typical administrative agency— an agency that would combine rulemaking, prosecutorial, and adjudicative functions. During the floor debates on the bill, some legislators noted that the business community opposed combining all three functions within one agency housed in the Labor Department—because of fears that the agency would be unfair to business. *See* Subcomm. on Labor of the Senate Comm. on Labor and Public Welfare, 92d Cong., 1st Sess., *Legislative History of the Occupational Safety and Health Act of 1970* 982 (Comm.Print 1971) (remarks of Rep. Anderson, noting that "Secretary of Labor ... has traditionally been the voice of labor in the administration" and that proposed bill would make the Secretary, in effect, "prosecutor, judge, and jury all in one"); 473 (remarks of Sen. Holland, noting fears that Secretary of Labor would represent labor and not business interests). Senator Dominick introduced a business-supported substitute bill that would have created *two* additional agencies, independent of OSHA—one agency with exclusive authority to promulgate health and safety regulations and the other with exclusive authority to adjudicate charged violations. Senator

Javits proposed the compromise that Congress eventually enacted—a compromise which left the rulemaking (legislative) and enforcement power with OSHA, but which placed adjudicative power in OSHRC in order (as Senator Williams put it) "to provide every assurance [of] fairness and due process." *Id.* at 1147. *See also id.* at 469, 471 (remarks of Sen. Javits, noting opposition of labor to his amendment but describing review commission as "very small price to pay" for "inspir[ing] confidence in the community that we expect to obey this law"); 1015 (remarks of Rep. Scherle: "distribution of functions" would be "fairer and more equitable").

This history suggests that OSHRC's mission is primarily factual in nature; its role is to hear charges of violations, *see id.* at 472 (remarks of Sen. Dominick, noting that purpose of OSHRC is to "decide whether the rules ... have in fact been violated"); and it seeks to guarantee that those charges are adjudicated fairly—in particular, without the bias that can arise from placing prosecutorial and adjudicative functions within a single agency. *See, e.g.,* Elman, *Administrative Reform of the Federal Trade Commission,* 59 Geo.L.J. 777, 810 (1971). The power to adjudicate inevitably encompasses, to some degree, the power to "declare" the law. *See Brennan v. Gilles & Cotting, Inc.,* 504 F.2d 1255, 1261–62 (4th Cir.1974). But Congress must have foreseen that any such OSHRC power would be limited. After all, Congress specifically rejected a plan to place rulemaking powers in a body independent of OSHA. And, this fact suggests that Congress did not intend OSHRC to possess broad powers to set policy through the creation of rules—powers that other agencies sometimes exercise in adjudicatory (as well as rulemaking) proceedings. *See generally* Shapiro, *The Choice of Rulemaking or Adjudication in the Development of Administrative Policy,* 78 Harv.L.Rev. 921 (1965) (describing National Labor Relations Board's use of adjudicatory proceedings for rulemaking purposes). This history suggests to us that, in cases of a conflict

between an OSHRC interpretation of OSHA rules and OSHA's interpretation, Congress intended OSHA to be the more authoritative source.

Second, practical administrative considerations favor looking to OSHA for a more authoritative interpretation of the regulation. Since OSHA employees chose the language of the regulation, OSHA is more likely to have an institutional memory of the regulation's purposes and meaning. *Cf. Mayburg v. Secretary of Health and Human Services, supra*, 740 F.2d at 105–06. Moreover, OSHA's experience as both a "legislating" and "enforcing" agency provides it with expert knowledge of the likely practical outcomes of different interpretations. OSHRC, too, has acquired some expertise in this area from its experience in adjudicating disputes over OSHA regulations, *cf. Legislative History, supra*, at 429 (remarks of Sen. Williams), and this expertise entitles its views to special consideration in appropriate cases. But, that expertise arises out of its having adjudicated many cases; it is likely factual in nature; and it necessarily concerns examples of rule violations (which are presumably less typical than instances of compliance).

In sum, practical considerations of expertise as well as legislative history of Congressional intent suggest that OSHA speaks with greater authority when the interpretation of OSHA's substantive rules is at issue. And, despite OSHRC's contrary interpretation, under normal circumstances courts should continue to defer to OSHA's interpretations of its own regulations. Thus, we stick to our conclusion that the front-end loader at issue here falls within OSHA's rule.

c. The concurring Commissioner noted that the driver of the front-end loader would have quickly backed up past the two-foot blind spot. He wrote

Once in motion, the loader was covering ground the operator had seen to be clear and there was no obstruction of the operator's view. Operating the machine in reverse gear with no alarm sounding when the loader was moving, as alleged in the citation and observed by the compliance officer, does not violate the standard because the operator's vision was not obstructed at that time.

We find it difficult to follow this reasoning. For one thing, the citation says that the machine "which had an obstructed view to the rear was operated in reverse gear." This language would seem to cover travel both within and past the blind spot. For another thing, testimony that the loader moved backwards without the alarm on, if believed, tends to show it started without the alarm on. (It is likely, but not certain, for example, that a car seen driven down a road at evening without lights, also started off without lights.) In any event, the regulation does not limit a violation to travel over the blind spot. It is difficult to believe that OSHA intends to allow the driver of a machine with, say, a twenty-five foot blind spot to turn off the alarm once he has backed up twenty-five feet. The rationale of the concurrence evidently did not command a majority of the OSHRC panel; but, in any event, to apply the rationale here is arbitrary given the record before us.

II

■ Having rejected the Commission's rationale for affirming the ALJ, we must now decide whether to review the ALJ's findings here or to remand to OSHRC for further review. *See SEC v. Chenery Corp., supra*, 318 U.S. at 93–95, 63 S.Ct. at 461–463 (remanding case to agency while noting agency was free to reach same result for different reasons). The Secretary asks us to review these findings and to reverse the ALJ on our own—on the ground that OSHRC *must* reverse as a matter of law. *See Pullman-Standard v. Swint*, 456 U.S. 273, 292, 102 S.Ct. 1781, 1792, 72 L.Ed.2d 66 (1982) ("[W]here findings are infirm because of an erroneous view of the law, a remand is the proper course unless the record permits only one resolution of the factual issue."); *Marshall v. Western Electric, Inc.*, 565 F.2d 240, 246 (2d Cir.1977) (court may decide factual issue if "the administrative record permits only one conclusion"). We believe a re-

mand is proper for we cannot now say that the record in this case permits only one inference from the evidence that was before the Commission.

OSHA's compliance officer, Warren Huse, testified that, when he first arrived at the job site, he saw the loader back up without the alarm sounding. He also said that, later, one of Amorello's employees backed up the loader for him but the alarm did not sound; .another employee then turned a switch, and the alarm worked. Robert Joyce, Huse's supervisor, testified that he was present; and he confirmed Huse's account.

Amorello's witnesses did not directly contradict this story. But they did present testimony suggesting that Huse was near an operating backhoe that may have been noisy enough to mask the sound of a properly audible alarm on the loader. Amorello also made much of Huse's alleged overreaching to find violations and of alleged discrepancies in Huse's testimony; Amorello implied, for example, that Huse said the alarm did not work, when, at worst, it had just been turned off. The ALJ eventually concluded that Huse's testimony (and presumably that of Joyce) lacked the necessary credibility.

The parties disagree, of course, as to whether this ALJ conclusion is adequately supported. There is also some question as to whether the ALJ correctly took into account the fact that he had before him an *amended* citation (charging a non-operat*ing* alarm), rather than the *original* citation (charging an "inoper*able*" alarm). But we here express no view about the merits of the controversy. We simply point out that the issues at stake—concerning disputed facts, witness credibility, and the adequacy of an ALJ's actual findings—are precisely those sorts of issues that Congress intended OSHRC to resolve. How it does so, and the weight it gives to its ALJs' views when it does so, is primarily and initially a matter for the Commission, not the courts. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). *See generally* 5 K. Davis, *Ad-ministrative Law Treatise* §§ 29:22–27 (2d ed. 1984).

For the foregoing reasons, the Commission's order is *vacated* and the case is *remanded* for further proceedings consistent with this opinion.