**Frank LUKMAN, Petitioner,**

**v.**

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondent,**

**American Electric Power Service Corporation, Amicus Curiae.**

**No. 88–1733.**

United States Court of Appeals, Tenth Circuit.

Feb. 22, 1990.

---

William E. Kenworthy of Rea, Cross & Auchincloss, Washington, D.C., for petitioner.

Ellen L. Beard, Atty. (George R. Salem, Sol. of Labor, Allen H. Feldman, Associate Sol. for Sp. Appellate and Supreme Court Litigation, and Mary–Helen Mautner, Counsel for Appellate Litigation, with her on the brief), U.S. Dept. of Labor, Washington, D.C., for respondent.

James M. Elegante, William J. Evans with him on the brief, Parsons, Behle & Latimer, Salt Lake City, Utah, for amicus curiae.

Before McKAY and LOGAN, Circuit Judges, and BOHANON, District Judge.[*]

McKAY, Circuit Judge.

This case involves a petition to review a decision of the Benefits Review Board of the United States Department of Labor ("Board") which dismissed, on administrative res judicata grounds, plaintiff's petition for review of the decision of an administrative law judge ("ALJ").

## I. FACTS

On May 2, 1978, Frank Lukman filed his first claim for black lung benefits with the Department of Labor. This claim was denied by a claims examiner on July 13, 1979, largely because Lukman failed to prove that he was totally disabled by pneumoconiosis. Mr. Lukman did not pursue this claim further.

On March 10, 1981, more than one year after the denial of his first claim, Mr. Lukman filed his current claim for black lung benefits. The deputy commissioner reviewed both the evidence from the first claim and new evidence presented by Mr. Lukman. The deputy commissioner concluded that Mr. Lukman was still not entitled to benefits.

Mr. Lukman further pursued this claim by requesting a hearing before an ALJ. An evidentiary hearing was held on December 9, 1982. The ALJ may have applied the wrong regulations to Mr. Lukman's second claim because of confusion over what date Mr. Lukman's second claim was considered filed. Nevertheless, after conducting a complete hearing, the ALJ denied benefits.

---

[*] Honorable Luther Bohanon, United States Senior District Judge for the Northern, Eastern, and Western Districts of Oklahoma, sitting by designation.

We do not fully outline the merits of Mr. Lukman's claim because the underlying facts are only slightly relevant to the procedural issue before us.

Mr. Lukman next petitioned the Board for review of the ALJ's conclusion. Instead of deciding Mr. Lukman's case on the merits, the Board raised, sua sponte, the application of the regulation at 20 C.F.R. § 725.309(d) which requires miners filing duplicate claims for black lung benefits to prove a material change in condition.[1] The applicability of this section had not been considered by the parties, the ALJ, or even the deputy commissioner. Nevertheless, the Board concluded that the deputy commissioner's denial of Mr. Lukman's second claim was tantamount to a finding that no material change in condition had been demonstrated. Thus, applying section 725.-309(d), the Board dismissed Mr. Lukman's second claim based on the previous denial of the first claim.

The Board reconsidered its decision en banc and affirmed its earlier decision on March 30, 1988. Although the judges disagreed over how to approach a claim for benefits filed more than one year after the denial of a previous claim for benefits, the majority held that in this case the ALJ had no jurisdiction to hold a hearing or participate in the matter in any way. The majority explained that the deputy commissioner was to determine whether there had been a change in circumstances and that that determination was reviewable only by the Board on a substantial evidence standard. Because the Board construed the deputy commissioner's denial of the second claim as tantamount to a determination that there had not been a material change in conditions, they ignored the ALJ's hearing and simply concluded that the deputy commissioner's denial "for lack of a material change" was supported by substantial evidence.

Petitioner now appeals the Board's dismissal of his claim. This petition presents two separate issues. First, we must determine what administrative procedures are required when considering a second claim for benefits filed more than one year after the denial of a previous claim. Second, we must determine whether the procedures followed in this case substantially fulfilled those requirements.

## II. STANDARD OF REVIEW

■ The issue of procedural requirements for a black lung benefits determination presents a question of law subject to *de novo* review by this court. *Cf. In re Ruti–Sweetwater, Inc.,* 836 F.2d 1263, 1266 (10th Cir.1988); *North American Coal Corp. v. Director, O.W.C.P.,* 854 F.2d 386, 388 (10th Cir.1988). In this case the Board and the Director of the Office of Workers' Compensation Programs disagree as to the procedures to be followed. We have adopted the position of the Director for two reasons. Initially, we are persuaded by the well-written and exhaustive brief filed by the Director in this case. Indeed, we adopt as our own portions of the brief with only editorial changes. In addition, the Supreme Court has held that the Board's interpretation of the Longshore and Harbor Workers' Compensation Act is not entitled to any special deference from the courts. *Potomac Elec. Power Co. v. Director, O.W.C.P.,* 449 U.S. 268, 278 n. 18, 101 S.Ct. 509, 514 n. 18, 66 L.Ed.2d 446 (1980). Several circuits have followed this decision.[2] We have discovered only one circuit, ours, that has not fallen in line with *Potomac Electric.* This court has previously stated that we would defer to the Board's interpretations of the Longshore and Black Lung Benefits Acts. *Director, O.W.C.P. v.*

---

1. 20 C.F.R. § 725.309(d) (1989) provides in relevant part:
   In the case of a claimant who files more than one claim under this part, the later claim shall be merged with the earlier claim for all purposes if the earlier claim is still pending. If the earlier miner's claim has been finally denied, the later claim shall also be denied, on the grounds of the prior denial, unless the deputy commissioner determines that there has been a material change in conditions. . . .

2. *Saginaw Mining Co. v. Mazzulli,* 818 F.2d 1278, 1283 (6th Cir.1987); *Lee v. Consolidation Coal Co.,* 843 F.2d 159, 162 (4th Cir.1988); *Peabody Coal Corp. v. Blankenship,* 773 F.2d 173, 175 (7th Cir.1985).

*Gurule,* 653 F.2d 1368, 1372 (10th Cir. 1981). We note, however, that *Potomac Electric* was not called to this court's attention in making the *Gurule* ruling. Therefore, in light of the Supreme Court's mandate, this court now adopts the position of no deference to the Board's interpretation of the Acts. This change has been submitted to the entire court en banc without objection.[3]

The Supreme Court has also held that the courts should give the Secretary's interpretation of the black lung regulations substantial deference. *Mullins Coal Co. v. Director, O.W.C.P.,* 484 U.S. 135, 108 S.Ct. 427, 440, 98 L.Ed.2d 450 (1987). Therefore, we adopt the Director's position and reverse the Board's decision concerning the applicable procedures.

### III. ENTITLEMENT TO AN ALJ HEARING ON A SECOND CLAIM

▆ This case can be simplified to the question of whether a miner is entitled to a complete ALJ hearing when filing a second claim for black lung benefits more than one year after the denial of a previous claim. We hold that the applicable statutes and prior practice require such a hearing.

#### A. *Plain Language of the Longshore Act*

The plain language of the Longshore Act, incorporated into the Black Lung Benefits Act, 30 U.S.C. § 932(a) (1982), mandates an ALJ hearing on any claim filed with a deputy commissioner whenever a party requests such a hearing. The applicable statutory provisions prescribe the basic adjudication procedures for all black lung and longshore claims. First, "a claim for compensation may be filed with the deputy commissioner." 33 U.S.C. § 919(a) (1982). After investigating the claim and "upon application of any interested party[, the deputy commissioner] shall order a hearing [on the claim]." 33 U.S.C. § 919(c) (1982). This hearing "*shall* be conducted by a[n] administrative law judge" in accordance with the Administrative Procedure Act. 33 U.S.C. § 919(d) (1982) (emphasis added).

Thus, the statute mandates an ALJ hearing, on the record, upon request. The Longshore Act provides no authority for an appeal directly from a deputy commissioner to the Board, which is the procedure ordered by the Board in the decision below. Accordingly, it appears that "Congress has directly spoken to the precise question" of a claimant's right to an ALJ hearing, and this "unambiguously expressed intent" must be given effect. *Chevron, U.S.A. v. NRDC,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). But even if the Longshore Act could be read as containing any ambiguity on this issue, the Director's interpretation must still be upheld as "a permissible construction of the statute." *Id.* at 843, 104 S.Ct. at 2782.

#### B. *Historical Practice Under the Act*

Although the plain language of the Longshore Act alone substantiates a claimant's right to an ALJ hearing on a new claim, the evolution of the statute's adjudicatory provisions also underscores the importance of an ALJ hearing on all contested questions relating to a claim. Since its

---

**3.** Our decision applies only to the Longshore and Black Lung Benefits Acts and does not create a standard rule for all administrative statutes. An example of a contrary result in another administrative law area is found in the Occupational Safety and Health Act. We identified a circuit split over whether to defer to the interpretation of the agency (Secretary of Labor) or the adjudicative body (the Occupational Safety and Health Review Commission) in *Dole v. Occupational Safety & Health Review Comm'n,* 891 F.2d 1495 (10th Cir.1989). The First, Fifth, and Seventh Circuits defer to the Secretary. *See United Steelworkers v. Schuylkill Metals Corp.,* 828 F.2d 314, 319–20 (5th Cir.

1987); *Brock v. Chicago Zoological Soc'y,* 820 F.2d 909, 912 (7th Cir.1987); *Donovan v. A. Amorello & Sons,* 761 F.2d 61, 64–66 (1st Cir. 1985). In contrast, the Second, Fourth, Sixth, Eighth, and Ninth Circuits defer to the Commission. *See Brock v. Bechtel Power Corp.,* 803 F.2d 999, 1000–01 (9th Cir.1986); *Usery v. Hermitage Concrete Pipe Co.,* 584 F.2d 127, 132 (6th Cir.1978); *Marshall v. Western Electric,* 565 F.2d 240, 244 (2d Cir.1977); *Brennan v. OSHRC,* 513 F.2d 713, 715–16 (8th Cir.1975); *Brennan v. Gilles & Cotting, Ind.,* 504 F.2d 1255, 1261–62 (4th Cir.1974). In *Dole,* we joined those Circuits which defer to the Commission.

original enactment in 1927, the Longshore Act has consistently required a hearing on any claim if requested by a party. For forty-five years that hearing was conducted by a deputy commissioner, the same official that processed claims, gathered evidence, and informally decided claims. Even under the 1927 Act, however, the deputy commissioner lacked authority to resolve a claim without a hearing on the record, if any party requested a hearing. An award made without notice and a hearing could be "attacked and set aside as without validity." *Crowell v. Benson*, 285 U.S. 22, 47–48, 52 S.Ct. 285, 291, 76 L.Ed. 598 (1932).

In 1972 Congress transferred the hearing powers of deputy commissioners to hearing examiners, which are now ALJs. Pub.L. No. 92–576, 86 Stat. 1251, 1261, § 14 (Oct. 27, 1972). The sole purpose of this transfer was to separate the administrative and adjudicative functions. H.R. Rep. No. 92–1441, 92d Cong., 2d Sess. (1972), *reprinted in* 1972 U.S.Code Cong. & Admin.News 4698, 4708. But this transfer of the power to hold hearings, effectuated by amending section 19(d) of the Act, did not alter the language of section 19(c) requiring the deputy commissioner to order a hearing "upon application of any interested party." *See* 33 U.S.C. § 919(c) and (d) (1982). While the presiding official changed from a deputy commissioner to an ALJ, the right to a hearing remained.

The 1972 amendments also changed the first level reviewing body from the district court to the newly created Benefits Review Board. Again, however, the amendments did not change the standard of review. Thus, neither the original statute nor the present one has ever authorized the type of procedure ordered by the Board in this case.

In sum, the statute can only be read as requiring that all black lung claims, including subsequent claims, be processed and adjudicated via the same three-tier administrative review process, beginning with a deputy commissioner and proceeding in turn to an ALJ and then to the Board. No statutory basis exists for permitting a complete bypassing of an ALJ hearing or immediate review by the Board of a deputy commissioner's determination on any type of claim.

### C. *Plain Language of the Black Lung Regulation*

■ The black lung procedural regulations also provide no basis for the Board's elimination of an ALJ hearing. Those regulations make no distinctions between the procedures for handling initial and subsequent claims. All claims, whether initial or subsequent, are filed with the Department. *See* 20 C.F.R. §§ 725.301–725.311 (1989). The deputy commissioner investigates the claim by collecting relevant evidence, arranging medical examinations of claimants, and identifying, notifying, and obtaining evidence from responsible operators who may be liable for the payment of benefits. *See* 20 C.F.R. §§ 725.401–725.414 (1989). The deputy commissioner then makes an initial finding as to claimant's eligibility and attempts to resolve the claim informally. *See* 20 C.F.R. §§ 725.410, 415–19 (1989).

However, the deputy commissioner can resolve a claim only if the parties are in agreement. The regulations are unequivocal on the right to an ALJ hearing in a disputed claim: "In *any* claim for which a formal hearing is requested or ordered [by the deputy commissioner] ..., the deputy commissioner *shall* refer the claim to the Office of Administrative Law Judges for a hearing." 20 C.F.R. § 725.421(a) (1989) (emphasis added). The regulations also provide that "[a]ny party to *a* claim ... *shall* have a right to a hearing concerning *any* contested issue of law or fact unresolved by the deputy commissioner." 20 C.F.R. § 725.450 (1989) (emphasis added). Nowhere do these regulations suggest that a subsequent claim is to be processed any differently from an initial claim or that a subsequent claim does not entitle a party to an ALJ hearing. These regulations are mandatory and apply by their terms to all claims and all contested issues of law or fact. There are only two instances in which the Secretary has varied the black lung regulations to allow direct appeal

from a deputy commissioner to the Board. These involve attorneys' fee awards, *see* 20 C.F.R. § 725.366(e) (1989), and commutation of black lung benefits to a lump sum award, *see* 20 C.F.R. § 725.521(c) (1989). Those two exceptions prove that where the Secretary believes a deviation from the three-tier statutory claims review process is appropriate, she has promulgated a regulation to that effect. The Secretary has promulgated no such regulation for duplicate claims, and the Board, which lacks rulemaking powers, has no authority to do so itself.

Except in the two examples noted, the regulations nowhere give a party dissatisfied with a deputy commissioner's determination, on any issue, the right to appeal it to the Board. The Board attempts to circumvent these regulations by labeling the deputy commissioner's denial a "final determination," and by claiming that there is no need to develop a record and therefore no need for a full-blown hearing. However, whether a claimant has shown a material change in condition requires consideration and comparison of medical evidence on two different dates, a typical fact-finding process for which an ALJ hearing is quite appropriate.

### D. *The Board's Procedure Departs From Past Practice*

It should also be emphasized that the Board's decision in this case is an abrupt departure from past administrative practice by the Department, where full-fledged ALJ hearings have always been available for new claims, in accordance with the statute and regulations. Nonetheless, the Board's decision appears to be based on an attempt "to foster administrative efficiency" and to avoid delays and administrative burdens by eliminating one tier of the claims review process. Benefits Review Board Decision and Order, March 30, 1988, at 2–3. When the same justification was offered for eliminating deputy commissioner consideration of modification requests, it was not accepted by other courts of appeal. *See Saginaw Mining Co. v. Mazzulli*, 818 F.2d at 1280–81; *Lee v. Consolidation Coal Co.*, 843 F.2d at 161–62. "Efficiency," no matter

how desirable, is not a justification for rewriting the statute and regulations, neither of which is within the Board's authority. Even if we accept the notion that duplicate claims is an area that can be handled more efficiently, it is not our function, nor is it the Board's, to legislate. We must simply apply the statutes and regulations as they stand.

### E. *The Real Purpose Behind Section 725.309(d)*

The Board relies on section 725.309(d) to support its abolition of an ALJ hearing. However, the real purpose behind the statute was to open the door for subsequent claims.

When the duplicate claims regulation, section 725.309(d), was first proposed, it provided only that a later claim would be denied on the grounds of a prior denial unless the later claim was a request for modification meeting the requirement of 20 C.F.R. § 725.310 (1989). 43 Fed.Reg. 17,743 (1978). Modification requests, however, can only be filed within one year of final denial of the earlier claim. Accordingly, a number of commentators pointed out that the proposed regulation did not sufficiently take into account the progressive nature of the disease. They explained that the proposed regulation would prohibit the filing of new claims by miners whose conditions have progressed to total disability. The Department therefore modified the language of section 725.309 to reflect its agreement that "a miner whose claim has once been finally denied ... should be allowed to file a new claim on the grounds of a progression to total disability." *Id.* The current regulatory language was thus added to permit a new claim, even more than a year after a prior denial, if "the deputy commissioner determines that there has been a material change in conditions." 20 C.F.R. § 725.309(d) (1989).

This explanation makes clear that the sole purpose of section 725.309(d) was to provide relief from the ordinary principles of finality and res judicata to miners whose physical condition deteriorates. It follows

that the Board is simply wrong in assuming, with no cited authority, that "[t]he purpose of 20 C.F.R. § 725.309(d) is to avoid the necessity of holding repeated full-blown hearings in previously denied claims" and that its "basis ... lies in the doctrine of *res judicata*." Benefits Review Board Decision and Order, March 30, 1988, at 3. The Secretary actually adopted the key regulatory language to permit, not to restrict, the filing of new claims that might otherwise be barred by res judicata.

The Board's misunderstanding of the purpose of section 725.309(d) caused it to attempt to achieve "administrative efficiency" rather than the intended remedial goal of providing miners with progressively worsening health full and equal access to black lung benefits. The real purpose of section 725.309(d) was to permit new claims to be filed even where modification under section 725.310(a) was no longer available because more than a year had passed since the first claim was denied.

F. *Appropriate Procedural Requirements For New Claims*

■ The judges on the Board suggested several differing methods for dealing with second claims filed more than one year after the denial of a first claim. On rehearing en banc, the majority held that ALJ hearing or review was not necessary or even allowed. Other judges suggested differing roles for the deputy commissioner, the ALJ, and the Board. We hold that the Longshore Act and the black lung regulations create only a preliminary issue for consideration and no unique procedure for adjudication of second claims where modification is no longer available. Thus, we conclude that second claims for benefits filed more than one year after denial of an initial claim must be treated procedurally very similarly to any other claim. We

therefore reject the bifurcated approach adopted by the Board and hold that a deputy commissioner must determine simultaneously whether (1) there has been a material change in condition, and (2) whether the claimant is entitled to benefits.[4] After such determinations by the deputy commissioner, a claimant is entitled to a hearing before an ALJ to examine both issues *de novo*. Finally, review on the merits of the ALJ's decision by the Board and the appropriate court of appeals is to be made available.

## IV. THE LUKMAN PROCEEDINGS

■ Having announced the requirements for adjudication of second claims, we must now determine whether the procedures adopted in Mr. Lukman's case comported with those requirements, and, if not, what remedy will be applied. Although the deputy commissioner did not make an explicit finding of no change in circumstances, we believe that the deputy commissioner's review and the ALJ hearings did not rise to the level of reversible error. The failure by the deputy commissioner and the ALJ to address the issue of material change was harmless error because Mr. Lukman actually received a full ALJ hearing on the overall issue of entitlement. Even though Mr. Lukman was entitled to a deputy commissioner and an ALJ determination on the issue of material change in conditions, the most he could win by prevailing on that issue was an opportunity to make his best case on the issue of entitlement. He has already received that opportunity, thus any remand to require the ALJ to consider evidence of a change in circumstances would be useless.

■ However, we hold that the Board's summary dismissal of the claim on res judicata grounds violated Mr. Lukman's right

4. We recognize that the material change issue must be considered prior to a complete consideration of the claim on the merits. We hold, however, that regardless of the deputy commissioner's resolution of the material change issue, the deputy commissioner must still make a finding regarding the merits of the claim. Of course if the deputy commissioner finds no material change in conditions, the claim will also be rejected on the merits. However, the finding on the merits will allow the ALJ to examine both issues *de novo* at the hearing stage. The ALJ and the Board will obviously consider the material change issue first, before resolving the claim on the merits. We believe that this procedure is a fair reading of the statute and will also promote administrative efficiency.

to have his case reviewed by the Board on the merits. Although Mr. Lukman was allowed to introduce evidence of a material change during the Board's en banc hearing, the Board never reviewed the ALJ's decision on the merits. This lack of review becomes important in Mr. Lukman's case when we recognize that the ALJ may have applied the wrong statute to Mr. Lukman's claim because of some confusion over when the claim was "filed" under the statute. Thus, we reverse the decision of the Board dismissing Mr. Lukman's case on res judicata grounds. We remand the case to the Board with directions to review the ALJ's decision on the merits and with specific directions to remand to the ALJ for further consideration if the Board concludes that the ALJ applied the incorrect statute.

The case is REVERSED and REMANDED to the Board.