**BIG HORN COAL COMPANY,**
Petitioner,

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondent.**

**John J. Madia, Real Party in Interest.**

No. 93–9542.

United States Court of Appeals,
Tenth Circuit.

May 24, 1995.

John S. Lopatto III of Paulson, Nace, Norwind, and Sellinger, Washington, DC, for petitioner.

Helen H. Cox, U.S. Dept. of Labor, Office of the Sol., Washington, DC (Thomas S. Williamson, Jr., Sol.; Donald Shire, Associate Sol.; and Patricia M. Nece, U.S. Dept. of Labor, Washington, DC, with her on the brief), for respondent.

Martin J. Linnet of Wildeman & Linnet, Denver, CO, for real party in interest.

Before EBEL and SETH, Circuit Judges, and MECHEM, Senior District Judge.*

* Honorable E.L. Mechem, Senior District Judge, United States District Court for the District of New Mexico, sitting by designation.

EBEL, Circuit Judge.

Petitioner Big Horn Coal Company ("Big Horn") seeks review of a decision by the Benefits Review Board ("BRB") of the United States Department of Labor ("DOL") holding Big Horn liable for the black lung benefits, past and present, paid to one of its former miners. Big Horn argues that the liability should instead rest with the Black Lung Benefits Trust Fund. The Director of the Office of Workers' Compensation Programs ("government" or "DOL") argues that the BRB lacked subject matter jurisdiction to consider Big Horn's appeal and that Big Horn waived the liability issue at an earlier proceeding. We find that BRB did have jurisdiction and that Big Horn waived its liability argument in the proceeding below. Thus, we affirm the BRB's judgment.

## FACTS

John Madia ("Madia"), a coal miner who mined between the 1930s and 1950s, filed an application for black lung benefits in 1975. An initial medical examination suggested that Madia was ineligible for benefits, but the Department of Labor ("DOL") did not actually deny his application. In 1978, Congress liberalized the eligibility rules for black lung benefits, and re-reviewed Madia's file. The DOL initially denied Madia's claim in 1979 based on the information it possessed, but reversed its position in the same year when it received an X-ray report showing pneumoconiosis, or black lung disease. Madia started drawing benefits from the Black Lung Disability Trust Fund, rather than his former employer, because employers were only made liable for post–1969 coal mine employment. 30 U.S.C. § 932(c).

In 1982, despite his alleged disability, Madia informed the DOL that he had worked as a coal miner with Big Horn Coal in 1977–78. The DOL started modification proceedings to name Big Horn as the "responsible operator" and thereby shift liability from the Trust Fund to Big Horn. Big Horn initially disclaimed any liability and also alleged that

Madia was not entitled to benefits. In addition, Big Horn claimed that the Trust Fund should pay any benefits to Madia because of a 1981 amendment to the Black Lung Benefits Act that "transferred" liability to the Trust Fund for cases that were "denied" before the 1978 liberalizing amendments. 30 U.S.C. §§ 932(c)(2), (j)(3). Big Horn argued, and now continues to maintain, that Madia's claim was or should have been "denied" before the 1978 amendments.

The deputy commissioner of the DOL concluded that Madia was eligible for benefits, that Big Horn was the responsible operator, and that the claim did not qualify for a transfer. Big Horn challenged these findings and requested a hearing with an Administrative Law Judge ("ALJ"). At the hearing in 1984, Big Horn withdrew its contention that it was not a "responsible operator," and the ALJ considered only the issue of Madia's medical entitlement to benefits. The ALJ found that Madia was entitled to benefits.

Big Horn appealed the case to the BRB. The BRB determined that Big Horn had waived its argument contesting liability and the transfer issue at the hearing. However, it remanded the case for further proceedings on the eligibility issue.

At the second hearing, the ALJ again found that Madia was entitled to benefits. The ALJ sent copies of his order to the last known address of Big Horn's counsel by regular mail on August 30, 1988, even though the law requires service by certified mail. 33 U.S.C. § 919(e); 20 C.F.R. § 725.478 (1993). The post office returned the service because Big Horn's counsel had moved twice without informing the DOL. The appeals period of 30 days passed without Big Horn filing an appeal.

At some point, Big Horn's counsel must have acquired actual notice of the order because on January 9, 1989, Big Horn's counsel filed a request with the deputy commissioner for a modification of the ALJ's order due to the lack of correct service. In June 1991, the district director[1] issued a document which

---

1. In 1990, the DOL amended its regulations to rename the "deputy commissioner" as "district director" for some purposes. 20 C.F.R. § 725.101(a)(11) (1993). To avoid confusion, we will generally use the term "deputy commissioner," the official named in the relevant statutes,

purported to correct the service deficiency by sending the document by certified mail and claiming that the parties had 30 days from that point to file an appeal. In July 1991, within 30 days of the date of the district director's document, Big Horn filed a notice of appeal. On appeal to the BRB, no party questioned the BRB's jurisdiction. The BRB affirmed the ALJ's order and again denied Big Horn's transfer arguments on the ground that Big Horn had explicitly waived that claim. The BRB noted that on appeal Big Horn did not advance any arguments why waiver should not be applied against it, but rather simply tried to advance arguments on the merits of the transfer issue. Because the BRB held that Big Horn had waived that issue, it declined to consider Big Horn's arguments on the merits of the transfer issue.

Big Horn timely filed a petition for review of the BRB's decision with this court. *See* 33 U.S.C. § 921(c) (authorizing review of BRB decisions by the courts of appeals), as incorporated into the Black Lung Benefits Act by 30 U.S.C. § 932(a). It challenges its liability based on the transfer theory and claims that the ALJ lacked subject matter jurisdiction to impose liability on an employer in a case that Big Horn claims should have been transferred to the trust fund. Big Horn does not contest Madia's eligibility for benefits on appeal.

The DOL contends that Big Horn failed to file a timely notice of appeal from the ALJ order to the BRB and that it waived its defenses to liability during the 1984 hearing. We address these issues first.

### DISCUSSION

### I. JURISDICTION OF THE BENEFITS REVIEW BOARD

The Black Lung Benefits Act borrows its administrative framework from the Longshore and Harbor Workers Compensation Act ("LHWCA"). 30 U.S.C. § 932(a). LHWCA requires parties desiring review of a compensation order to file for review within 30 days of the time that the order is "filed."

A compensation order shall become effective when filed in the office of the deputy commissioner as provided in section 919 of this title, and, unless proceedings for the suspension or setting aside of such order are instituted as provided in subdivision (b) of this section, shall become final at the expiration of the thirtieth day thereafter.

33 U.S.C. § 921(a). To set aside a compensation order of an ALJ, parties must seek review from the BRB, an appellate body within the DOL:

A notice of appeal, other than a cross-appeal, must be filed within 30 days from the date upon which a decision or order has been filed in the Office of the Deputy Commissioner pursuant to section 19(e) of the LHWCA....

20 C.F.R. § 802.205(a) (1993). Further, the BRB's regulations hold that "[f]ailure to file within the period specified ... shall foreclose all rights to review by the Board with respect to the case or matter in question. Any untimely appeal will be summarily dismissed by the Board for lack of jurisdiction." *Id.* at § 802.205(c).

"The Supreme Court has instructed us that the preferred staring point in reviewing an administrative order is to satisfy ourselves that the agency whose order we are asked to review 'had jurisdiction over the matter in dispute.'" *Harmar Coal Co. v. Director, Office of Workers' Compensation Programs,* 926 F.2d 302, 307 (3d Cir.1991) (citing *Cardillo v. Liberty Mut. Ins. Co.,* 330 U.S. 469, 473, 67 S.Ct. 801, 804, 91 L.Ed. 1028 (1947)). The 30–day filing requirement is jurisdictional. *Blevins v. Director, Office of Workers' Compensation Programs,* 683 F.2d 139, 141 (6th Cir.1982). Further, if the "Board lacked jurisdiction to decide [an] appeal, its decision on the merits ... cannot stand, and we must vacate its decision." *Harmar,* 926 F.2d at 308. *See also Blevins,* 683 F.2d at 143 ("[A] claimant who fails to appeal the order of an ALJ to the BRB within the allotted thirty-day period, depriving the BRB of an opportunity to consider an issue, is precluded from raising that issue on a petition for review in [the court of appeals].") (citing *Atlantic & Gulf Stevedores*

and only refer to "district director" in specific situations.

v. Director, Office of Workers' Compensation Programs, 542 F.2d 602, 605 (3d Cir.1976)). This reflects Congress' "strong interest in the prompt and final resolution of black lung compensation claims." Blevins, 683 F.2d at 143.

Thus, our first step must be to determine if the BRB had jurisdiction conferred by a timely appeal by Big Horn. In this case, the key question for timeliness is when the 30–day period fixed by 33 U.S.C. § 921 for taking an administrative appeal begins to run. We first look to the relevant statutes. As noted above, § 921(a) provides that the 30–day appeal period starts when an ALJ's order is "filed in the office of the deputy commissioner as provided in section 919." Section 919(e), in turn, provides that the order "shall be filed in the office of the deputy commissioner, and a copy tnereof shall be sent by registered mail or by certified mail to the claimant and to the employer at the last known address of each."

▮ We believe that this statutory language plainly requires the service of an order by certified mail for the 30–day appeals limitation period to begin. Section 921's reference to § 919 would be redundant if the 30–day period would start merely by physically filing the order with the office of the deputy commissioner, because § 921 already so provides. The only step that § 919 adds to § 921 is the service of notice to the parties by certified mail. It is a settled rule of statutory construction that we must, if possible, construe a statute in "such fashion that every word has some operative effect." United States v. Nordic Village, Inc., 503 U.S. 30, 36, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992). Accordingly, to give meaning to the reference to § 919, we hold that, for the purposes of triggering the 30–day appeal period, LHWCA requires both filing in the office of the deputy commissioner and service on the parties by certified mail. Accord Nealon v. California Stevedore & Ballast Co., 996 F.2d 966, 971 (9th Cir.1993) ("There is no case that even suggests that the Longshore Act does not require service on the claimant and the employer as part of 'filing.' "); Jewell Smokeless Coal Corp. v. Looney, 892 F.2d 366, 369 (4th Cir.1989); Patton v. Director, Office of Workers' Compensation Programs, 763 F.2d 553, 557 (3d Cir.1985);

see also Old Ben Coal Co. v. Jones, 897 F.2d 900, 902 (7th Cir.1990) (requiring service as a component of filing, but relying heavily upon 20 C.F.R. § 725.478 (1993), the black lung regulation interpreting the statutory provisions).

Even if the statute is a bit ambiguous, the black lung regulations applying those statutory provisions clearly require service on the parties by certified mail as part of the filing process:

On the date of issuance of a decision and order under § 725.477, the administrative law judge shall serve the decision and order on all parties to the claim by certified mail. On the same date, the original record of the claim shall be returned to the DCMWC in Washington, DC, and the decision shall be considered to be filed in the office of the deputy commissioner.

20 C.F.R. § 725.478 (1993). On the basis of this regulation, the circuits have uniformly held that an order is not considered filed for the purposes of triggering the start of the 30–day appeal period until the ALJ's decision is properly served upon the parties. Nealon, 996 F.2d at 971 ("All of the courts that have construed the Black Lung regulation have held that, under the regulation as well as the statute, the order may be considered filed only after the service requirement is met."); Old Ben, 897 F.2d at 903; Looney, 892 F.2d at 369; Patton, 763 F.2d at 557; Youghiogheny & Ohio Coal v. Benefits Review Board, 745 F.2d 380, 382–83 (6th Cir.1984).

▮ The government urges us to adopt a rule that the 30–day period commences once a party receives actual notice of the ALJ's decision, even if it did not receive notice by certified mail as required by § 919(e) and 20 C.F.R. § 725.478 (1993). The Fourth and Seventh Circuits have indicated that they might adopt such a rule, but have fallen short of actually doing so. Looney, 892 F.2d at 369 (court might, "if called upon the facts to do so," allow actual receipt by regular mail to trigger 30–day period); Old Ben, 897 F.2d at 903 ("[T]he ALJ's failure to comply with the statutory and regulatory provisions mandating service by certified mail tolled the thirty day filing period at least until Old Ben received actual notice....") (emphasis added). Neither circuit addressed the issue squarely, however, because the appealing parties in

both cases filed their notice of appeal within 30 days of actual notice. Allowing the 30–day period to start with actual notice would have the salutary effect of encouraging finality of administrative judgments when the only defect was the procedural one of failing to use certified mail in serving this order. *Looney*, 892 F.2d at 369. However, there is no provision in the statutes or regulations that would allow us to start the 30–day period with actual notice. The statutes and regulations explicitly call for service by certified mail and we cannot render this express language a nullity by allowing the clock to start ticking with actual notice. " 'Efficiency,' no matter how desirable, is not a justification for rewriting the statute and regulations ... [I]t is not our function, nor is it the [BRB's], to legislate. We must simply apply the statutes and regulations as they stand." *Lukman v. Director, Office of Workers' Compensation Programs*, 896 F.2d 1248, 1253 (10th Cir.1990).

Accordingly, we hold that the BRB had jurisdiction because Big Horn filed its notice of appeal within 30 days of receiving the ALJ's order by certified mail.[2]

## II. WAIVER OF ARGUMENT ON THE MERITS

The government claims that, during a hearing held on August 13, 1984, Big Horn waived its argument that the liability for Madia's claim should lie with the Trust Fund. During that hearing, the DOL attorney indicated to the ALJ that he wished to make some introductory comments about why Big Horn should be deemed the "responsible operator." Hearing Transcript at 7. The judge then turned to Big Horn's counsel to determine whether Big Horn was contesting that it was the "responsible operator." *Id.* Big Horn's counsel responded in the negative, and the ALJ deemed any argument regarding responsible operator status to be waived. *Id.*[3] The hearing then proceeded purely on the question of whether Madia was medically eligible for Black Lung Benefits.[4]

■ Department of Labor regulations provide that: " '[a] responsible operator' is the operator which is *determined liable* for the payment of [black lung] benefits." 20 C.F.R. § 725.492(a) (1993) (emphasis added). We conclude from this regulation that, when Big Horn withdrew its argument that it was not the "responsible operator," it waived its ability to contest liability once Madia was shown to be eligible for benefits.[5] *See Davis v. Director, Office of Workers' Compensation Programs*, 936 F.2d 1111, 1112 n. 2 (10th Cir.1991) ("A responsible coal mine operator is directly liable for the payment of blank lung benefits ...).

Mr. Arney: No.

    \*    \*    \*    \*    \*    \*

Judge Rippey: That's withdrawn then.
Hearing Transcript at 7.

---

2. Both sides spend considerable effort disputing whether the district director's (substituting for the deputy commissioner, 20 C.F.R. § 725.101(a)(11) (1993)) order of June 12, 1991, that purported to correct the ALJ's service error by serving the order by certified mail, could count as the starting point for the 30–day appeal period. The government contends that the district director did not have the power to correct a mistake of the ALJ. *See Director, Office of Workers' Compensation Programs v. Kaiser Steel Corp.*, 860 F.2d 377, 379 (10th Cir.1988) (deputy commissioner cannot correct errors other than his or her own). Resolving this argument is unnecessary for the purposes of this appeal, however, because Big Horn did file within 30 days of the district director's order. Even if the district director was without the power to issue the order, Big Horn would still have been able to file its notice of appeal because the appeals limitation period was tolled due to the absence of service by certified mail.

3. Judge Ruppey: Let's find out if [the issue of responsible operator] is really being contested. Mister Arney [counsel for Big Horn], are you contesting being the responsible operator?

4. Big Horn points to various points in the hearing transcript to suggest that it argued the transfer of liability issue. Hearing Transcript at 6, 29, 37, 39. However, in all of these instances, the contested issue was not that of transfer, but instead whether Madia qualified for an interim presumption that he was disabled by pneumoconiosis under 20 C.F.R. § 727.203 (1993).

5. We acknowledge that other regulations can be read to support Big Horn's argument that a "responsible employer" only means the operator last employing the miner and does not constitute an implicit rejection of the claim that liability should be transferred to the trust fund. For example, 20 C.F.R. § 725.493 (1993) simply explains that the "responsible operator" is "the operator or other employer with which the miner had the most recent periods of cumulative employment of not less than 1 year, as determined

Big Horn makes two arguments in response.[6] First, it argues that, when it conceded that it was the "responsible operator" at the 1984 hearing, it was only admitting that it was the last coal mine employer to have employed Madia and that it had employed him for twelve months extending at least one day past December 31, 1969. Big Horn Reply Br. at 13. However, the regulations clearly prescribe that liability is the crux of "responsible operator" status. Indeed, the very definition of "responsible" indicates the assumption of some sort of obligation, in this case liability. As the "transfer" issue is a defense to liability, the admission of liability constitutes a waiver of the defense.[7]

Second, Big Horn argues that it could not waive the transfer issue because it is jurisdictional. Specifically, it argues that the ALJ and BRB lacked the subject matter jurisdiction to impose liability on it if Madia's claim was denied before March 1, 1978, but later approved under the more liberal black lung rules. *See* 30 U.S.C. §§ 932(c), 945; 20 C.F.R. § 727 (1993). However, Big Horn fundamentally mischaracterizes the situation. Congress has expressly given the DOL, the deputy commissioner, ALJs, and the BRB jurisdiction to consider questions respecting black lung claims under the Black Lung Benefits Act. 30 U.S.C. § 932(a); 33 U.S.C. §§ 919(a)–(d), 921(b). Employer liability is necessarily one of the questions over which jurisdiction has been granted by the Black Lung Benefits Act. What Big Horn challenges is not the subject matter jurisdiction of the ALJ and BRB, but instead whether their decisions were correct on the merits.[8] Thus, because Big Horn has waived the "transfer" issue, we will not review the merits of its case.

## CONCLUSION

Accordingly, we AFFIRM.

---

in accordance with paragraph (b) of this section...."

However, viewing this regulation in light of the definition of "responsible operator" offered in § 725.492(a), we conclude that it can and should be viewed as compatible with our holding and the result suggested by the definition outlined in § 725.492(a). *See Payne v. Panama Canal Co.,* 607 F.2d 155, 164 (5th Cir.1979) ("Every statute must be viewed in its entirety so that each part has a sensible and intelligent effect harmonious with the whole."). That is, the provisions governing the period of employment constitute a necessary, but not sufficient, requirement of being classified as a "responsible operator."

In any event, the facts of the instant case support our holding that Big Horn's withdrawal of its argument that it was not the "responsible operator" constituted a concession that it, not the trust fund, would be liable for the payment of any black lung benefits. That is, not only did Big Horn make this concession, but it did not, during the hearing, raise the issue of transfer or attempt to argue that the alleged previous denial of Madia's claim for benefits required that the trust fund assume the liability for payment of benefits. Instead, Big Horn rested its entire case on its claim that Madia was not entitled to any benefits.

6. Big Horn also argues that the delay in processing the claim and in notifying it of its potential liability constitutes a violation of its due process rights. However, any prejudice it may have suffered from the delay does not rise to the level of constitutional magnitude.

7. We also reject Big Horn's argument that it could not waive the transfer issue until after the ALJ determined that Madia suffered from black lung disease and was entitled to benefits. While Big Horn styles its transfer argument as separate from the determination of liability, the question of transfer is actually a defense to liability for claims denied prior to March 1, 1978 and approved under 30 U.S.C. §§ 932(c)(2) & 932(j)(3). Moreover, the regulations governing "transfer" claims envision their disposition as early as possible in the process—even before the final disposition of the miner's claim. *See* 20 C.F.R. § 725.497(c) (1993). Thus, we believe that Big Horn waived its transfer defense at the hearing and was not entitled to raise the issue at a later date—i.e. on appeal.

8. Big Horn also suggests that we consider this an exceptional case in which we may reach the merits of issues not raised below because injustice will otherwise occur. *See Lyons v. Jefferson Bank & Trust,* 994 F.2d 716, 720–22 (10th Cir. 1993) (although we will generally not consider issues that were not raised and ruled upon below, we will consider them in unusual circumstances where injustice might result). Here, however, a party voluntarily waived the issue, and did not just fail to raise it below. Further, Big Horn does not persuasively demonstrate that any injustice would result from not rescinding its waiver.